**In re AMERICAN & FOREIGN POWER CO., Inc. et al.**

Civ. No. 490.

United States District Court
D. Maine, S. D.

Jan. 15, 1952.

332

Myron S. Isaacs, Chief Counsel and Marvin S. Fink, Counsel, Washington, D. C., for Division of Public Utilities, Securities & Exchange Commission.

James L. Boone and Reid & Priest, New York City, for American & Foreign Power Co., Inc.

Benjamin C. Milner, III, Simpson, Thacher & Bartlett, New York City, for Electric Bond & Share, principal stockholders in American & Foreign Power Co., Inc.

Louis A. Green, Stryker & Brown, New York City, pro se as a stockholder, and as a partner in Stryker & Brown, which firm is a substantial stockholder.

William J. Cogan, Belmar, N. J., and Simon Klein, New York City, for Frances Silver and others.

Otto G. Geiringer, New York City, for Dr. S. Z. Kantor.

Samuel B. Levine, Boston, Mass., pro se as a shareholder.

Norris Rossinoff, Bridgeport, Conn., for Rose & Harry Zucker.

Carlos L. Israels, New York City, for Carter Committee.

Arnold R. Ginsburg, Philadelphia, Pa., for McKenna Committee.

Claude L. Gonnet, New York City, for Norman Johnson Committee.

Herbert H. Klein, New York City, for Bedell Committee.

CLIFFORD, District Judge.

This is a proceeding brought before this Court by the Securities and Exchange Commission on a Supplemental Application, dated November 8, 1951, and filed pursuant to Sections 11(e) and 18(f) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. §§ 79k(e), 79r(f), requesting this Court to approve and enforce a plan, as amended, for the reorganization of American and Foreign Power Company, Inc., a Maine Corporation and a registered holding company. American and Foreign Power Company, Inc., is a subsidiary of Electric Bond and Share Company, also a registered holding company.[1]

By opinion dated September 21, 1948, 80 F.Supp. 514, and order dated October 11, 1948, this Court approved the 1947 Plan and directed its enforcement. By order dated January 4, 1949, upon motion of the Commission showing that changed circumstances had made the consummation of debt financing within the framework of the 1947 Plan no longer feasible, this Court vacated its enforcement order and remanded the proceeding to the Commission for further action. By another order issued the same day, this Court denied motions of other parties to the proceeding for an order withdrawing or vacating the opinion of September 21, 1948, and for other relief inconsistent with the remand order.

The Commission on May 2, 1949, entered its Finding and Opinion and Order holding that the 1947 Plan had ceased to be feasible, vacated its order approving the 1947 Plan, and ordered that Bond and Share and Foreign Power take appropriate steps to reorganize Foreign Power so that it should have outstanding only a single class of stock—namely, common stock, and such amount of debt securities as would meet the standards of the Act.

Foreign Power filed a further plan dated January 15, 1951. At the extensive hearings held on this plan, the organized committees and individuals who had appeared in the earlier proceedings cross examined the companies' witnesses. Two of the committees—namely, the Carter Committee, and the Norman Johnson Committee for the first preferred stock and the second preferred stock, respectively, adduced in-

1. In this opinion the plan of reorganization as so amended will be referred to as the "Plan" or as the "present Plan"; a prior plan dated May 21, 1947, as amended by amendments dated November 12, 1947, as the "1947 Plan"; the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79a et seq., as the "Act"; the Securities and Exchange Commission as the "Commission"; American & Foreign Power Co., Inc., as "Foreign Power", and Electric Bond and Share Company as "Bond and Share."

dependent evidence in support of their position.

On July 12, 1951, the record in the proceedings was closed. Thereafter, discussions were had between representatives of the organized committees and the companies, looking toward a compromise of the conflicting views. During the course of the proceedings various security holders had made overtures with the hope that the existing differences might be resolved so that a fair plan of reorganization might be more expeditiously consummated. The parties and committees, at various times, expressed the view that the staff of the Commission might be of help in bringing about agreement upon a plan. After the close of the record, the organized committees expressed their views concerning a possible compromise to the staff of the Commission. The staff then informed the companies and the committees separately, that if there existed an area of possible agreement, the staff would attempt to arrange a meeting of all groups. After separate meetings between the staff and the committees, and the staff and the companies, at which the staff was informed of their respective views, the representatives of the companies and the committees met together and arrived at a compromise, which is embodied in the amendment to the plan dated August 8, 1951. It is that plan, as amended, which is now before this Court for approval.

On November 7, 1951, the Commission entered its Finding and Opinion and Order finding the plan, as amended, necessary to effectuate the provisions of Section 11(b) of the Act and fair and equitable to the persons affected thereby, and approving the Plan.

The Commission on November 8, 1951, filed with this Court a Supplemental Application to approve, enforce, and carry out the terms and provisions of the Plan. This Court, by order dated November 8, 1951, fixed December 19, 1951, as the date for hearing upon the Plan, and prescribed the notice of such hearing to be given, the time within which objections might be made to the Supplemental Application or to the enforcement and carrying out of the terms and provisions of the Plan, or to the approval of this Court of the Plan, and the manner of making such objections.

Foreign Power, through direct or indirect ownership of securities, controls a large number of electric and gas utility companies operating in Cuba, Mexico, nine Central and South American countries, and China. Its history is summarized in the Court's 1948 Opinion, 80 F.Supp. 514, 520, to which reference is hereby made. For the twelve months ended December 31, 1950, its consolidated revenues were $145,-394,998. For the same period its consolidated net income was $17,962,605, and its corporate net income was $10,293,680.

The present capital structure of Foreign Power consists of the following securities:

$10,000,000 principal amount of bank loans, due serially 1951–1954; $49,500,000 principal amount of 3.75%–4.20% Notes, due 1955, all owned by Bond and Share;

$50,000,000 principal amount of gold debentures, 5% Series, due 2030, held entirely by the public;

478,992 shares of $7 Preferred Stock, of which 97.12% is held by the public and 2.88% by Bond and Share;

387,025.65 shares of $6 Preferred Stock, of which 83% is owned by the public and 17% by Bond and Share;

2,547,761 shares of $7 Second Preferred Stock, of which 15.29% is owned by the public and 84.71% by Bond and Share;

2,281,130 shares of Common Stock, of which 61.36% is held by the public and 38.64% by Bond and Share; and

Option Warrants to purchase 6,444,594.8 shares of Common Stock at $25 per share, of which 9.8% is held by the public and 90.2% by Bond and Share.

The $7 and $6 series of Preferred Stock rank *pari passu*, have a cumulative annual dividend preference at their respective rates, have a liquidation preference of $100 a share and accrued dividends, and are redeemable at $110 a share and accrued dividends.

The $7 Second Preferred Stock is junior to the Preferred Stock and is entitled to

cumulative dividends of $7 annually per share before any dividends may be paid on the common stock. As long as there are any accumulated and unpaid dividends on the Preferred Stock, no dividends may be paid on the Second Preferred Stock. Subject to the prior rights of the Preferred Stock, the Second Preferred Stock has a liquidation preference of $100 per share and accrued dividends, and has a redemption price of $105 per share plus accrued dividends.

As of September 30, 1950, the dividend arrearages on the Preferred Stock and Second Preferred Stock, and the aggregate liquidation preferences, were as follows:

ings, approximating the corporate income of Foreign Power for 1950, adjusted for the new capital structure under the Plan, include approximately $3,038,000 of interest on presently outstanding debt securities which will remain outstanding and other fixed charges, $3,243,000 of interest on the new junior debentures, and $9,420,000 of earnings on the new Common Stock.

The earnings estimate used in connection with the 1947 Plan, comparable to the estimate of $15,700,000 per annum, amounted to $12,467,000 per annum. That figure included $1,245,000 of interest on the Prior Debentures then proposed to be sold and other fixed charges, $3,884,000 of in-

| Stock | Arrearages Total | Arrearages Per Share | Aggregate Liquidation Preference |
|---|---|---|---|
| $7 Preferred | $ 41,995,887 | $ 87.675 | $ 89,895,087 |
| $6 Preferred | 29,084,929 | 75.15 | 67,787,494 |
| 2nd Preferred | 356,684,404 | 140. | 611,460,504 |

Under the Plan the proposed capital structure of Foreign Power will consist of the following securities:

| | |
|---|---|
| 3½% Bank Loans, due serially 1951–1954 | $10,000,000 |
| Gold Debentures, 5% Series due 2030 | 50,000,000 |
| 4.8%, 35-year Junior Debentures | 67,564,600 |
| Common Stock, without par value | 6,923,932 shares |

The Plan proposes that the new securities be distributed as follows:

| Outstanding Securities of Foreign Power | Securities to be issued |
|---|---|
| For each publicly held share of $7 Preferred Stock | $90 principal amount of 4.8% debentures and 3.75 shares of new common stock |
| $6 Preferred Stock | $80 principal amount of 4.8% debentures and 3 shares of new common stock |
| $7 Second Preferred Stock | .85 share of new common stock |
| Common Stock | .02 share of new common stock |
| To Bond and Share For all its holdings of Foreign Power securities | 3,856,723 shares of new common stock (55.7%) |
| Option Warrants and Preferred Stock, Allotment Certificates | To be cancelled |

The Commission tested the fairness of the proposed allocations against its estimate of $15,700,000 per annum, representing a reasonable approximation of the foreseeable earnings of the company. Such earn- terest on the then proposed junior debentures, and $7,338,000 of earnings on the then proposed new common stock. The higher earnings realized by Foreign Power in 1950 and anticipated in the future reflect.

the substantial investments made in Foreign Power's subsidiary companies in recent years.

The following table compares the interest and prospective earnings allocated to public stockholders of Foreign Power and to Bond and Share, under the 1947 Plan and under the present Plan:

$6 stock at the rate of .144 share per share per year. Bond and Share for its holdings of first preferred stocks will receive additional common stock at the rate of 2,730.3 shares per month from October 1, 1950 to the effective date.

The Plan refers to certain stockholders' derivative actions instituted and pending in

|  | 1947 Plan | | Present Plan | |
|---|---|---|---|---|
|  | Total | Per Share | Total | Per Share |
| **$7 Preferred Stock** | | | | |
| Interest on Debentures | $2,175,000 | $4.68 | $2,010,000 | $4.32 |
| Earnings on Common | 1,451,000 | 3.12 | 2,373,000 | 5.10 |
| Total | $3,626,000 | $7.80 | $4,383,000 | $9.42 |
| **$6 Preferred Stock** | | | | |
| Interest on Debentures | $1,365,000 | $4.25 | $1,233,000 | $3.84 |
| Earnings on Common | 707,000 | 2.20 | 1,312,000 | 4.08 |
| Total | $2,072,000 | $6.45 | $2,545,000 | $7.92 |
| **Second Preferred Stock** | | | | |
| Earnings on Common | $ 227,000 | $0.55 | $ 450,000 | $1.16 |
| **Common Stock** | | | | |
| Earnings on Common | $ 38,000 | $0.029 | $ 38,000 | $0.027 |
| **Bond and Share** | | | | |
| Interest on Debentures | $ 344,000 | — | $ — | — |
| Earnings on Common | 4,915,000 | — | 5,247,000 | — |
| Total | $5,259,000 | — | $5,247,000 | — |

As shown in the above table, public holders of the Preferred Stock and Second Preferred Stock of Foreign Power will receive under the present Plan the entire benefit of the increase between 1947 and 1951 in Foreign Power's earning potentialities. Such public stockholders will likewise receive, under the present Plan, a larger proportion of whatever Foreign Power may recover on its non-income-producing investments, as a result of their larger participations in the new common stock.

In addition, the Plan provides that the debentures to be issued will bear interest from October 1, 1950 and that the first preferred stocks will receive from October 1, 1950 to the effective date of the Plan additional common stock, in the case of the $7 stock at the rate of .178⅔ share per share per year, and in the case of the

the courts, and still in the pleading stages, which actions are stated to cover matters encompassed in the proceedings instituted by and pending before the Commission. The approval of the Plan by the Commission, its confirmation by an appropriate court and its consummation are to have the effect of complete discharge of each and all of the claims upon which such actions are based.

The Plan also proposes that if the Commission approve the Plan, it also approve the amounts of payments, if any, which Foreign Power agrees to make to the plaintiffs, their attorneys, their accountants and any other persons employed and retained by such plaintiffs in the court actions enumerated in the Plan. Such payments, if any, are to be in full settlement and satisfaction of all amounts which such persons

are or may be entitled to receive from Foreign Power by way of reinbursement of disbursements, allowances for services or otherwise. The Plan also contains a stipulation that Foreign Power will pay such fees and expenses as the Commission shall allow for Plan services subject to the right of Foreign Power to seek judicial review of any such award, allowance or allocation.

The Plan provides for the issuance of debentures in denominations of $100 and multiples thereof. No fractional interests in the new securities will be issued. In lieu thereof, the security holder may instruct the exchange agent to purchase an additional fractional interest sufficient to entitle him to one whole new security. If such instructions are not given by the security holder, Foreign Power or the exchange agent will sell for the holder's account the fractional interest to which the holder is entitled.

Six years after the consummation date of the Plan, all rights of Foreign Power's security holders to receive securities or cash thereunder will terminate. Any cash held by the exchange agent at that time shall become a part of Foreign Power's general corporate funds. Any securities held at that time may be cancelled or retired or sold for cash in which latter case the proceeds will be added to Foreign Power's general corporate funds.

The Plan also contains a request that the Commission find the transactions necessary or appropriate to effectuate the provisions of Section 11(b) of the Act, in accordance with the provisions of Supplement R of the Internal Revenue Code.

■■ There is no necessity at this time to set forth in detail the legal standard to be observed by this Court in ruling upon the Supplemental Application of the Commission. In the prior opinion rendered in this case in, D.C. 80 F.Supp. 514, a brief survey of the relevant authorities was made, citing Lahti v. New England Power Association, 1 Cir., 160 F.2d 845, and In the Matter of Northern States Power Co., D.C.Minn., 80 F.Supp. 193. The principle observed in these cases, and adopted by this Court in this case is that the Commission's determination of facts from the record is not to be set aside if such determination has a rational basis. Such a rational basis would exist if the Commission's findings found support in the documentary and testimonial evidence in the record and reasonable inferences based thereon. The Commission's judgment, within a "range of tolerance", will be respected by this Court in reaching its decision as to the necessity, fairness, and equitable nature of the Plan submitted for approval.

In the 1951 proceeding it appears that substantially all the persons and all the committees of stockholders who were previously in opposition to the 1947 Plan are now in accord with the present Plan. The Carter Committee, the Berdell Committee (both committees representing stockholders owning both classes of first preferred stock), the Norman Johnson Committee, the McKenna Committee (both representing stockholders owning second preferred stock), and Leland S. Sproul, an individual stockholder of both first and second preferred stock, all previously opposed to the 1947 Plan, now vigorously support the present Plan as being the product of prolonged and bona fide arm's length negotiations. No person or committee who previously opposed the 1947 Plan submitted briefs or argued orally against the present Plan. These facts, of course, are not determinative of the fairness of the plan, but such agreement reached, after exhaustive give-and-take over a period of seven years, is consistent with the result in which no valid argument or important evidence has been overlooked or ignored. This Court will not easily or quickly disturb a result reached in such a manner.

Nevertheless some of the objections which were raised in the recent hearing should be briefly considered, with reference to the present Plan even though they may have been discussed in the prior opinion of this Court.

■ An argument has been made to the effect that the affairs of Foreign Power

cannot safely be entrusted to a Board of Directors presumably dominated by Bond and Share through its control of the majority common stock interest. The Plan is said to be defective in its failure to provide for cumulative voting. The Commission, while generally recognizing the desirability of cumulative voting, felt that the possibility of non-American representation on the Board might be prejudicial to Foreign Power in its many financial and other relationship with Government officials and agencies. This is a matter on which the Commission, having before it the picture of the far-reaching activities of Foreign Power and the confidential nature of some of the problems faced, is equipped to pass judgment. Certainly, in view of the announcement of future policy to maintain public representation on the Board (Commission's Findings and Opinion—Holding Company Act Release No. 10870, at p. 31), and the reservation of jurisdiction by the Commission to take "such action as may be necessary" relating to the membership of the Board, this Court cannot assume in advance that the present Plan is in this respect unworkable and unreasonably defective in protection afforded to the minority stockholders. Indeed, the judgment of the Commission in this instance seems to have balanced equitably the sometimes conflicting objective of security in working arrangements and maximum participation of minority stockholders.

A second objection urged against the Plan was that the size and rate of contributions to the sinking fund were relatively low. It was pointed out in argument that at the rate contemplated by the Plan, nineteen years of sinking fund contribution would equal approximately one year's dividends. The objection ended with the plea that sinking funds contributions be larger, that the debt be retired earlier, and that the contribution be tied in with dividend policy in order to avoid the impact of huge fixed charges in a year of depression.

This Court is not asked to comment on the worth of the above proposal. Its task is solely to analyze the Plan and determine if the provisions have a rational basis. The present sinking fund, from the point of view of a debenture holder, constitutes an improvement over that incorporated in the 1947 Plan; the accumulation begins immediately, not in the rather remote future. The Commission well appreciates that the workability of any plan depends in part upon the absence of too great a burden of fixed charges. It has tried in this instance to balance the necessity for an orderly and safe liquidation of debt with the needs of the company both in its operations and its considerable program of expansion. As noted in the Commission's opinion (Holding Company Act Release No. 10870, p. 31) the proposed sinking fund is higher than that required where a domestic utility company is selling bonds for cash, in that the amount is fixed in terms of a definite amount of cash to be expended, rather than principal amount of securities to be retired. Moreover, it must not be forgotten that the public holders of first preferred stock receive about 40% of the new common stock. If the present sinking fund requirements favor the recipients of common stock dividends, the benefit must not be thought of as something from which the public is excluded. In view of the above, this Court deems the decision of the Commission as to the size of and the rate of contributions to the sinking fund to be well within a reasonable discretion.

The remaining objections urged at the hearing of December 19, 1951, substantially rehearse those submitted to this Court at the prior hearing.

In evaluating Foreign Power the Commission correctly approached it on a going-concern basis, as opposed to an emphasis on liquidation preference. It properly applied the doctrine of absolute priority. Any reference to current market quotations of securities, such as was made in argument, can be of little if any weight in determining value.

In the exceedingly complicated problem of allocating values to and between the various classes of investors, much can be said and has been said. The first preferred stock have a position in the Plan

merited by their priority, arrearages, and level of current earnings. The relative position of the $7 and $6 first preferred was determined in a manner affording substantial justice to those two classes, based on the assumption that the enterprise was a going concern. Both classes of first preferred stock receive substantially more under the present Plan than under the 1947 Plan. The public holders of the second preferred have received the most marked increase in evaluation since 1947—about 100%. As for public holders of the common stock and option warrants, the point cannot be too strongly stressed that there is no guarantee to any class of junior investors of a participation in a reorganized enterprise. The principle of absolute priority implies a sacrifice, if such be necessary, by those at the bottom of the investment ladder. This Court is not disposed to resubmit the matter of allocation of new securities among the classes of investors for further consideration; and it finds that the Commission acted reasonably and with due regard for the evidence in allocating new securities to the present investors of Foreign Power.

There remains only the question of the appropriateness of the "give-up" to be required of Bond and Share, in the amount of $4,600,000. The challenges to this figure, originally numerous, have centered about the alleged overreaching with reference to service fees of Bond and Share prior to 1935, the year of enactment of the Public Utility Holding Company Act. This point was considered by the Court in the opinion in 80 F.Supp. 514 at page 532. Suffice to say, that a reading of the findings of the Commission in 1947 convinces this Court that it arrived at its conclusion only after considering all the allegations and the evidence. Nothing new has occurred to change the prior opinion of the Court on this point.

Therefore, this Court finds that this most recent version of the Plan is fair, equitable, and appropriate to effectuate the purposes of the Public Utility Holding Company Act, and should be enforced in accordance with an Order to be entered in the above-entitled matter.