In re NIAGARA HUDSON POWER COR-
PORATION et al.

Civ. No. 3476.

United States District Court
N. D. New York.

Oct. 31, 1949.

698

Harry G. Slater, Chief Counsel, and Herbert D. Miller, Washington, D. C., appearing in behalf of the Securities & Exchange Commission.

Lauman Martin, Randall J. Le Boeuf, Jr., and William N. Mason, New York City, appearing in behalf of the Niagara Hudson Power Corporation.

Whitman, Ransom, Coulson & Goetz, New York City, by Richard Joyce Smith, New York City, appearing in behalf of the United Corporation.

Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., by Morris L. Forer, Philadelphia, Pa., appearing for David J. Green and others.

Sullivan & Worcester, Boston, Mass., by John N. Worcester, and Robert B. Luick, Boston, Mass., appearing in behalf of Niagara Share Corporation and Lehman Corporation and State Street Investment Corporation.

Martin Taylor, and Paul D. Nulle, New York City, appearing in behalf of the Bankers Trust Co. of New York.

Scribner & Miller, New York City, by Charles E. Scribner, New York City, appearing in behalf of the First Preferred Stockholders of Niagara Hudson Power Corporation.

Harold Panken, New York City, appearing for Dr. Charles Weinreb and Mrs. Pauline Weinreb, holders of Class "B" option warrants.

Cooper, Erving & Savage, Albany, N. Y., by B. Jermain Savage, Albany, N. Y., appearing in behalf of certain holders of First Preferred stock of Niagara Hudson Power Corporation.

M. Victor Leventritt, New York City, appearing in his own behalf as holder of option warrants.

FOLEY, District Judge.

The Securities and Exchange Commission at the request of the Niagara Hudson Power Corporation makes this application pursuant to sections 11(e) and 18(f) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. §§ 79k(e), 79r(f), for the approval and enforcement of a certain consolidation plan and dissolution plan. The consolidation plan effects the consolidation of the three principal subsidiary companies of the Niagara Hudson Power Corporation, namely, Buffalo Niagara Electric Corporation, Central New York Power Corporation and New York Power and Light Corporation into a single electric and gas utility company, tentatively described as the New Operating Company. The dissolution plan shall cause the ultimate dissolution of the Niagara Hudson Power Corporation as a holding company only when the consolidation plan shall be consummated. Both plans were the plans of the Niagara Hudson Power Corporation and were filed for approval by the Commission in accordance with section 11(e) of the Act (Exhibits A and E attached to application). In exhaustive findings and opinion, dated August 16, 1949, the Commission approved the consolidation and dissolution plan as necessary to effectuate the provisions of section 11(b) of the Act, and as fair and equitable to the security holders affected, subject to certain outlined modifications (Findings and Opinion, Holding Company Act Release No. 9270; "Exhibit D" attached to application). In due course the modifications were provided and on August 25, 1949, the Commission entered its order approving the consolidation plan and the dissolution plan (Holding Company Act Release No. 9295; "Exhibit G" attached to the application). The findings and opinion of the Commission, reached after due notice to all interested parties and extensive formal hearings were not unanimous but were strongly dissented to by Commissioner McEntire, in particular reference to the creation of the Class "A" convertible preference stock and the necessity of the dissolution plan to effectuate the provisions of section 11(b) (2) of the Act. However, in this application the majority

of the Commission request judicial approval of the plans in accordance with its findings, opinion and order.

It would be burdensome, repetitious and unnecessary to the problem presented herein to discuss the financial structure and background of the Niagara Hudson Power Corporation and the three subsidiaries. These descriptive facts showing the complication of the structure and the various proceedings to bring the companies within the spirit of the Act are sufficiently outlined by the Commission in its findings and opinion (Release No. 9270).

By its findings and order of approval, the Commission was unable to create the millennium for the various groups of stockholders. The objections filed as directed by the order of this court are generally from the same class of stockholders who interposed objections before the Commission. The objectors are the holders of the first preferred stock of the Niagara Hudson Power Company and the holders of Class "B" option warrants new groups of first preferred stockholders who did not participate before the Commission were represented by B. Jermain Savage at the hearing before the court on September 30, 1949. Their preliminary objection based upon the claim that they did not receive notice of the hearings before the Securities and Exchange Commission was disposed of by the filing of an affidavit of mailing to the parties concerned. A hearing and oral argument was had by the court on September 30, 1949, and the oral argument presented was an important complement by the attorneys to their written objections and briefs. An opportunity to be heard was given to individual stockholders unrepresented by counsel with the thought that our concept of due process in situations of this kind should remove technicalities of procedure and allow all interested parties their "day in court," particularly where important property rights are involved. This individual class of stockholders were within the above described groups. There was no objection by any party to the necessity of the plan and the objections of the first preferred and warrant holders are directed to the "fair and equitable" standard applied

to them in the financial overhaul by the Commission.

It seems important now to outline my judicial function as it appears to me in this application. The Rules of the Road for such a review of approval and enforcement as herein have been set down with definiteness by the late Mr. Justice Rutledge in Securities and Exchange Commission v. Central-Illinois Securities Corporation, 338 U.S. 96, 69 S.Ct. 1377, 1393. His words of limitation are that the Commission findings as to valuation, which are based upon judgment and prediction, as well as upon "facts" are not subject to re-examination by the court *unless they are not supported by substantial evidence or were not arrived at "in accordance with legal standards."* (Italics mine.) Justice Rutledge read into section 11(e) of the Act the limiting words set forth in the alternative mode of review as provided by section 24(a) of the Act, 15 U.S.C.A. § 79x(a): "The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." I fully realize that these limitations do not prescribe an abject surrender of the judicial function to the administrative function. There must always be careful discernment as to the substance of the evidence and whether the administrative action was contrary to law. Even the expert may become arbitrary and unconscionable. From these principles I proceed to the discussion of the objections interposed herein.

The first preferred stockholders are most sincere in their objection. Much of this particular security is held in a fiduciary relationship and their interest in the alleged unfair shrinking of value is commendable. One group of the first preferred stockholders, the Committee for the First Preferred Stock, does not challenge Class "A" stock in esse because it proposed a plan of its own to the Commission in relation thereto (Release No. 9270, Page 41, Footnote 47). The conclusion of the Commission varies from this proposed plan only in the degree of valuation to be placed upon the respective interests in the allocation of new securities. Such conclusion in that respect

seems peculiarly within the province of the Commission.

This Committee argues that it is not receiving the equitable equivalent of the security it surrenders. The reduction of dividend is slight, being from $5.00 to $4.80 per share. The preference to assets upon liquidation will be sacrificed. However, there are the counterbalancing equities approved by the Commission as to the Class "A" stock and set forth in its Findings and Opinion. Namely, the Class "A" stock will be securities in an operating company instead of a holding company, will have increased voting power, will be senior to the Niagara Hudson Bank loan, will have a conversion privilege into common stock which in the judgment of the Commission will result in increased earnings in the future to the holders thereof.

These conclusions of the Commission are based upon evidence not seriously disputed by the Committee and seem peculiarly within the province of the Commission under the Act. The main challenge of the Committee does not seem to be directed to the evidence upon which these conclusions are based but challenge the legal standard and admitted method of the Commission in looking to the future value of the new securities as the "fair equivalent" rather than the present value.

■ I cannot agree with the Committee that the Commission in adjudging the investment value to be replaced must stay within the perimeter of the present and cannot without legal error estimate the prospective future earnings of the new securities. It is true that in Securities and Exchange Commission v. Central-Illinois the court said, "Valuation on the basis of a going concern necessarily has primary relationship to value as of the time the shareholders' surrender becomes effective, not as of some earlier, remote period or one long afterward." This particular statement from the context must be confined to the particular facts involved in that authority and must be read with the further statements in reference to exchange, i. e.: "Where the security holder is to receive new securities, the Commission is faced with a dual valuation problem. It must

evaluate the security to be surrendered and the securities to be received in exchange", and then again in the same opinion, "In effect the Commission's task was to apportion to the new stock earning power substantially equivalent to that surrendered." This method of determination necessitates a fair decision as to prospective earnings and this flexible approach to arrive at an equitable equivalent in similar situations as herein is outlined in many authorities. Otis & Co. v. Securities and Exchange Commission, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; Consolidated Rock Products Co. v. Dubois, 312 U.S. 510, 529, 61 S.Ct. 675, 85 L.Ed. 982; In re Standard Gas & Electric Co., 3 Cir., 151 F.2d 326; Lahti v. New England Power Association, 1 Cir., 160 F. 2d 845; Group of Investors v. Chicago, M. St. P. & P. R. Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959. I cannot agree with the objection of the Committee as to the alleged failure of the Commission to apply legal standards.

The objections, brief and oral argument of the first preferred, represented by B. Jermain Savage, are more belligerent in their approach to the evaluation by the Commission of the new for the old. They are suspicious of the originators of the plan and claim that the common stockholders of the Niagara Hudson will receive a windfall in dividends at their expense. They decry the rationalization of the Commission that the Class "A" stock might result in the future of a yearly dividend of $6.16 instead of their guaranteed dividend of $5 under their present security. They unqualifiedly reject the formula of the Class "A" stock as the "equitable equivalent" of their first preferred. They show by figures the lessening of their new security in the new financial arrangement. They unequivocally ask for payment of $107.50 in cash and distinguish this proceeding from other authorities because the Niagara Hudson Power Corporation is solvent.

■ These facts and honest contention by this particular group of first preferred stockholders are striking in their nature but in my judgment should have been directed to the Commission in their evaluation of the "equitable equivalent." This court

does not possess the power to overrule the Commission in its "expert wisdom" as to valuation. There is apparent, however, an honest attempt by the Commission to soften the blow to the first preferred by the creation of the convertible Class "A" with the sincere expectation that in the future there will be a better investment value for the first preferred together with the paramount objectives of simplicity of structure and advancement of the public interest. It is interesting to note the dissension within the ranks of the Commission which in the consideration of this problem led Commissioner McEntire to the conclusion that the majority was going too far in attempting to alleviate "hardship" to the first preferred. The claims now set forth were fully discussed by the Commission and its conclusions are adequately supported by the evidence.

The Commission in its enforcement of the policies of the Act should not be hampered in its determination of the proper type of holding company structure by consideration of avoidance of harsh effects on various stock interests which might result from enforcement of charter provisions of doubtful applicability to the procedures undertaken. Otis v. Securities and Exchange Commission, 323 U.S. 624, 638, 65 S.Ct. 483, 89 L.Ed. 511.

The finding of the Commission as to the investment value of Class "B" stock option warrants of Niagara Hudson is in accord with the evidence and the legal standard of determining present investment value. It is an unfortunate situation to jettison even the most inferior right. However, there is substantial evidence to bolster the conclusion of the Commission that there is not a reasonable expectation that the market price of Niagara Hudson's common stock would exceed the exercise price of the option warrants within the foreseeable future.

There are no objections by the holders of the preferred stocks of the three subsidiary companies nor by the holders of the second preferred and common stock of the Niagara Hudson Power Corporation, and the findings of the Commission are amply supported by the evidence in that respect.

The objections interposed herein are dismissed as insufficient and an order may be submitted in accordance herewith approving the Consolidation Plan and Dissolution Plan, and further directing enforcement and consummation of the Plans as requested in the application herein.