**KANTOR v. AMERICAN & FOREIGN POWER CO., Inc., et al.**

**ZUCKER et al. v. AMERICAN & FOREIGN POWER CO., Inc., et al.**

**SILVER v. AMERICAN & FOREIGN POWER CO., Inc., et al.**

Nos. 4635, 4636, 4639.

United States Court of Appeals
First Circuit.

June 6, 1952.

Rehearing Denied in No. 4635,
June 23, 1952.

Otto G. Geiringer, New York City, for S. Z. Kantor.

Norris Rossinoff, Bridgeport, Conn. (Burton, Rossinoff & Nowitz, Bridgeport, Conn., on brief), for Harry Zucker et al.

Simon Klein, New York City, and William J. Cogan, Belmar, N. J., for Frances Silver.

James L. Boone, New York City (Edwin D. Ford, Jr., John R. Burton, New York City, Reid & Priest, Adrian L. Foley, White & Case, New York City, Ernest L. McLean and McLean, Southard & Hunt, Augusta, Me., on brief), for American & Foreign Power Co., Inc.

John F. MacLane and Benjamin C. Milner, New York City (Simpson, Thacher & Bartlett, New York City, on brief), for Electric Bond & Share Co.

Myron S. Isaacs, Chief Counsel, Division of Public Utilities, Washington, D. C. (Roger S. Foster, General Counsel, Washington, D. C., and Marvin S. Fink and Aaron Levy, Washington, D. C., on brief), for Securities and Exchange Commission.

Claude L. Gonnet, New York City (Frank & Gonnet, New York City, on brief), for Norman Johnson Second Preferred Stockholders Committee.

LaRue Brown, Boston, Mass. (Herbert Homer Klein, Carlos L. Israels, Berlack & Israels, Harold P. Seligson, New York City, Brown, Field & McCarthy, Boston, Mass., on brief), for Carter and Berdell Committees for First Preferred Stockholders.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The appeals in these three cases are each from an order of the United States District Court for the District of Maine, entered January 17, 1952, approving and enforcing a plan of reorganization of American & Foreign Power Company Inc., which plan had heretofore been submitted to and approved by Securities and Exchange Commission, pursuant to § 11(b) (2) and (e) of the Public Utility Holding Company Act, 49 Stat. 803, 15 U.S.C.A. § 79k(b) (2) (e).

American & Foreign Power Company Inc. (Foreign Power) was organized under the laws of Maine in 1923 as one of the major subholding companies of Electric Bond and Share Company (Bond & Share). Foreign Power, through direct or indirect ownership of securities, controls a large number of electric and gas utility companies operating in Cuba, Mexico, nine Central and South American countries, and China. In addition, other operating subsidiaries are engaged in the transportation, telephone, water and ice businesses in Latin America.

In 1939 the Commission granted Foreign Power and its operating subsidiaries exemptions from various provisions of the Act, not, however, including §§ 5(a) and 11 (b), 15 U.S.C.A. §§ 79 et seq., 79e(a), 79k (b), in view of the fact that practically all of its income was obtained from subsidiaries operating in foreign countries. Shortly thereafter Foreign Power became a registered holding company, pursuant to § 5(a) of the Act.

The Commission in February, 1940, instituted integration proceedings under § 11(b) (1) of the Act against Bond & Share, Foreign Power, and others. However, the Commission did not press to a conclusion any issue relating to integration of Foreign Power's holdings, and the plan which the court below has enforced is not concerned with any such issue.

By order dated May 9, 1940, the Commission instituted corporate simplification proceedings under § 11(b) (2) of the Act against Bond & Share, Foreign Power, and others. On October 26, 1944, Foreign Power and Bond & Share, pursuant to § 11(e) of the Act, filed a joint plan for reorganization of Foreign Power. Proceedings with respect to this plan were consolidated with the § 11(b) (2) proceeding then pending before the Commission. After extensive hearings an amended plan was filed on May 22, 1947.

On November 4, 1947, the Commission issued its findings and opinion, holding that the complexities in the corporate structure of Foreign Power and the inequitable distribution of its voting power were in direct conflict with § 11(b) (2) of the Act and must be eliminated; and that the amended plan then before it was an appropriate means for effectuating the provisions of § 11(b); but that in specified particulars the said plan was not fair and equitable to the public holders of the first preferred stocks as a whole, or in respect of the allocation between the public holders of the $7 and $6 first preferred stocks; and that it greatly overcompensated the public holders of the second preferred and, to a lesser extent, the common stocks. At the same time the Commission indicated appropriate amendments which would enable it to give approval to the plan. Such amendments were duly filed and, on November 19, 1947, the Commission entered its order approving the plan. Upon application by the Commission, pursuant to §§ 11(e), 18(f), and 25 of the Act, the court below entered an order on October 11, 1948, approving and enforcing the plan. The court's opinion in the matter, issued September 21, 1948, appears in 80 F.Supp. 514.

Upon motion of the Commission, reciting that changed circumstances had made the consummation of debt financing within the framework of the 1947 plan no longer feasible, the district court on January 4, 1949, vacated its enforcement order and remanded the case to the Commission for further action.

On May 2, 1949, the Commission, after public hearings, entered its findings and opinion holding that the 1947 plan had ceased to be feasible, vacated its order ap-

proving said plan, and ordered that Foreign Power and Bond & Share take appropriate steps to reorganize Foreign Power so that it would have outstanding only a single class of stock, namely, common stock, and such amount of debt securities as would, in the circumstances then existing, meet the standards of the Act.

Pursuant to the order just mentioned the companies filed a further plan on January 16, 1951. Extensive hearings were held on this plan, at which various protective committees representing the public shareholders appeared in opposition. On July 12, 1951, the record in the proceedings was closed. Thereafter, discussions were had between representatives of the companies, of the protective committees, and of the Commission staff looking toward a compromise of the conflicting views. As a result a compromise was worked out which was embodied in an amendment to the plan filed August 8, 1951.

The Commission held a further hearing on the plan as amended, on August 15, 1951. At this hearing appellant Kantor appeared for the first time in the proceeding and indicated his opposition to the plan. The parties and those participants present who had previously appeared indicated their agreement with the compromise and waived the filing of briefs and oral argument before the Commission.

On November 7, 1951, the Commission entered its findings and opinion and issued its order approving the plan as amended, and the next day the Commission filed a supplemental application with the district court for approval and enforcement of the 1951 plan.

After notice and hearing the district court, on January 17, 1952, entered its order to the effect that the findings of fact and conclusions of law embodied in the Commission's findings and opinion and order dated November 7, 1951, "are supported by substantial evidence and were arrived at in accordance with legal standards"; that "the Plan is approved as fair and equitable and as appropriate to effectuate the provisions of Section 11 of the Act";

and appropriate direction was given for consummation of the plan. The court's opinion on the matter, filed January 15, 1952, appears in 102 F.Supp. 331. We are informed that one of appellants applied for a stay of the district court's order, which application was denied for failure of applicant to post a supersedeas bond. No application for a supersedeas was made to this court. Cf. the comments by Justice Frankfurter, dissenting, in In re Electric Power & Light Corp., 1949, 337 U.S. 903, 69 S.Ct. 917, 93 L.Ed. 1717. In fact the plan has already been consummated, on February 29, 1952.

■ Appellants are individual small holders of Foreign Power securities, who appeared in opposition at a late stage in the proceedings, after a satisfactory compromise plan of reorganization had been hammered out by arm's length bargaining between the various protective committees and representatives of the companies, aided by members of the Commission staff. A heavy burden rests upon them to persuade us that the findings and conclusions of the Commission, approved by the district court, are unsupported by substantial evidence in the record or are predicated on a clear-cut error of law. In other words we would not, in the circumstances, lightly undertake to unscramble the omelet, the plan having been consummated as the culmination of years of painstaking labor by the Commission and the court below in its formulation and consideration. What we said in Lahti v. New England Power Ass'n, 1 Cir., 1947, 160 F.2d 845, 858, is particularly applicable here:

"In a reorganization of this size and complexity, nobody could draft a plan that would measure up to a perfectionist's ideal, and astute minds can always seize upon points of detail upon which a plausible argument can be erected that an ideal equitable equivalent has not been given to this or that security, or that perfect equality of treatment has not been achieved as, between the holders of various classes of securities. There necessarily has to be a leeway, a 'range of tolerance', within

which the Commission's judgment as to the fairness of the allocations is controlling."

The capital structure of Foreign Power, to be simplified by the reorganization under the plan, may be summarized as follows:

| | Amount | % Owned by Bond & Share | % Owned by Public |
|---|---|---|---|
| 3½% bank loans, due serially 1951–54...... | $10,000,000 | ..... | 100.00 |
| Gold debentures 5% series due 2030........ | 50,000,000 | ..... | 100.00 |
| 3.75%–4.20% notes due 1955.............. | 49,500,000 | 100.00 | ..... |
| $7 cumulative first preferred stock, no par value ............................... | 478,992 shs. | 2.88 | 97.12 |
| $6 cumulative first preferred stock, no par value ............................... | 387,025.65 shs. | 17.00 | 83.00 |
| $7 cumulative second preferred stock, no par value ............................... | 2,547,761 shs. | 84.71 | 15.29 |
| Common stock, no par value.............. | 2,281,130 shs. | 38.64 | 61.36 |
| Option Warrants to purchase common stock at $25 per share...................... | 6,444,594.8 shs. | 90.2 | 9.8 |

The $7 and $6 first preferred stocks ranked *pari passu* and were entitled to cumulative annual dividends of $7 and $6 per share, respectively. The liquidation preferences of these two classes of first preferred stocks were the same, $100 per share plus accrued and unpaid dividends. Also, they had the same redemption price, $110 per share plus accrued and unpaid dividends. The second preferred stock was junior in all respects to both classes of first preferred stock. It had a cumulative annual dividend of $7 per share, payable before dividends could be paid on the common stock, and was entitled to a liquidation preference over the common stock of $100 per share plus accrued dividends. The second preferred stock was redeemable at $105 per share plus accrued dividends. As of September 30, 1950, there were large dividend arrearages on each of the various classes of preferred stocks.

The plan provides for the retirement of the publicly-held first preferred stock, second preferred stock, and common stock through the issuance of new debentures and new common stock to such first preferred stock, and new common stock to the publicly-held second preferred stock and common stock. It is provided that Bond & Share will surrender its holdings of the various classes of securities of Foreign Power, that is, its holdings of debt securities, and of

first preferred, second preferred, and common stocks, for new common stock. All the option warrants to purchase common stock are to be cancelled.

■ In determining the allocations of new securities as between the various interests, the Commission in its 1947 findings and opinion reviewed extensively the history of the transactions between Foreign Power and its parent Bond & Share, considering in detail various claims of mismanagement and overreaching on the part of Bond & Share which had been or might be asserted by or on behalf of Foreign Power, some of the alleged claims running back to years way before the passage of the Public Utility Holding Company Act. The Commission gave consideration to the fact that in litigation these claims might not only be subject to defenses on the merits, but to various other defenses such as laches, statutes of limitations, and the like, and to all the normal hazards of litigation. The Commission concluded that it was appropriate to settle these alleged claims as part of the allocations; that Bond & Share was therefore not entitled to treatment on a parity with the public security holders on the basis merely of its relative holdings in Foreign Power; but that in the allocation of new securities there should be an appropriate reduction of Bond & Share's par-

ticipation, and an enhancement of the participation by the public security holders, to take account of this factor. On the basis of the evidence, the Commission concluded that a net "give-up" of about $4,500,000 on the part of Bond & Share fell within the range of a fair settlement of the claims asserted and that the proposed allocation to Bond & Share on that basis constituted fair treatment both to Bond & Share and to the public stockholders as a group. The 1947 findings on this matter were reaffirmed by the Commission in its 1951 findings and opinion, and in addition the Commission concluded that there should be some further reduction in Bond & Share's participation, in settlement of claims which might be asserted against Bond & Share for events which had occurred since 1947. The district court reviewed and affirmed the findings of the Commission in this respect. We have not been asked by these appellants to examine the voluminous administrative record to determine whether the findings and conclusions of the Commission with reference to the appropriate amount of the "give-up" by Bond & Share on account of these claims is supported by substantial evidence. We must accept the Commission's findings on this phase of the case, and the findings, so accepted, justify the allocation adjustments dependent thereon. See Ladd v. Brickley, 1 Cir., 1946, 158 F.2d 212, certiorari denied 1947, 330 U.S. 819, 67 S.Ct. 675, 91 L.Ed. 1271. Because of these adjustments, the plan provides for the settlement and discharge of the various claims asserted by or on behalf of Foreign Power against Bond & Share.

### No. 4635.

Appellant Kantor is the holder of 200 shares of $6 first preferred stock which he has not exchanged for the new debentures and common stock as provided in the plan.

Kantor complains that the Commission disregarded correct legal standards in not according due weight to the liquidation preference of $100 per share plus arrearages of cumulative dividends, applicable to both classes of first preferred stock.

In its 1951 findings and opinion the Commission stated:

"The 'fair and equitable' standard of Section 11(e) requires that 'each security holder in the order of his priority receive from that which is available for the satisfaction of his claim the equitable equivalent of the rights surrendered.' It is now clearly established that in the application of this standard to a reorganization of this type, the whole bundle of rights being surrendered by a security holder in the Section 11(e) plan must be viewed as though in a continuing enterprise with primary emphasis being placed upon operative rights such as claim to earnings and dividends rather than those inchoate rights which might arise on liquidation."

Further, the Commission's findings contained the following:

"The two most important factors to be taken into consideration in determining relative allocations between the series of preferred stocks are the prospect of the Company's liquidation or a redemption of the preferred stocks absent the compulsion of the Act, and the closeness or remoteness of the values of the stocks to their respective liquidation and redemption prices. In the instant case, we believe the prospect of either the company being liquidated or the preferred stocks being redeemed is extremely remote. Moreover, it is apparent that the values of the preferred stocks are substantially less than either their liquidation or redemption prices. Under the circumstances, it would seem appropriate to give primary weight to the preferred stocks' dividend rates in testing the relative participations afforded in the plan."

Appellant says it was error to assume remoteness of liquidation. But appellant has not brought to our attention, in the appendix to his brief, all the evidence, or indeed any of the evidence, in the administrative record bearing on this issue, in an effort to convince us that the finding was unsupported by substantial evidence. In the circumstances, it is not our obligation to pick our way through several thou-

sand pages of testimony and 600 exhibits to see if the Commission had a factual basis for its conclusion that, absent the compulsion of the Act, the prospect of Foreign Power being liquidated or of its preferred stocks being redeemed was "extremely remote." This conclusion, incidentally, is quite consistent with other findings,—for instance, that during the period 1946–1950 Foreign Power had embarked on a large-scale capital equipment construction program.

In the argument before us, Kantor's primary attack was upon the fairness of the allocations as between the $6 and $7 first preferred stocks. For every publicly-held share of $7 first preferred stock, there is to be issued $90 principal amount of 4.8 per cent new debentures and 3.75 shares of new common stock. For every publicly-held share of $6 first preferred stock, there is to be issued $80 principal amount of 4.8 per cent new debentures and 3 shares of new common stock.

In answer to the allegation of unfairness in the allocations as between these two classes of first preferred stock, the Commission's findings contained the following:

"Kantor's contentions amount to no more than an argument that greater weight should be accorded the liquidation values expressed in the charter than to the current claim to earnings of the two classes of preferred stocks. Despite similar contentions made in the 1947 proceedings, we decreased the participation of the $6 stock in relation to the $7 stock, provided for in the plan, since in our view the proposed allocation accorded undue weight to liquidation preferences. In the numerous cases in which we have passed on the question of the relative treatment of two series of stock which rank *pari passu*, we have applied the principle that where liquidation or redemption is remote, absent the compulsion of the Act, primary weight must be accorded to the relative claims to earnings. Conversely, where liquidation or redemption is less remote, greater effect may be given to the liquidation preferences

or redemption values set forth in the charter.

"We conclude that the prospects of liquidation or redemption apart from the requirements of the Act are remote, in the circumstance here presented and that primary weight in determining the relative participation of two series of first preferred stocks should be given to their relative claims to earnings. We accordingly reject the arguments advanced in this respect on behalf of Kantor."

The Commission followed an approved technique in making the allocations In S. E. C. v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 129, 69 S.Ct. 1377, 1394, 93 L.Ed. 1836, the Court stated the rule that in simplification proceedings pursuant to §§ 11(b) (2) and (e) of the Act, "the involuntary charter liquidation preference does not of itself determine the amounts shareholders are to receive, but instead the amounts allocated should be the equitable equivalent of the securities' investment value on a going-concern basis." To like effect see Niagara Hudson Power Corp. v. Leventritt, 1951, 340 U.S. 336, 346–347, 71 S.Ct. 341, 346, 95 L.Ed. 319, where the Court said: "The informed judgment of the Commission, rather than that of the market, has been designated by the Act as the appropriate guide to fairness and equity within the meaning of the Act. Under the standards approved by this Court, that informed judgment looks for investment values on a going-concern basis measured primarily by the Commission's estimates of earnings within the foreseeable future." See also Otis & Co. v. S. E. C., 1945, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; Lahti v. New England Power Ass'n, 1 Cir., 1947, 160 F.2d 845, 851.

The liquidation price for each share of $7 first preferred stock ($100 plus dividend arrearages) is $187.675. The liquidation price of each share of $6 first preferred stock ($100 plus dividend arrearages) is $175.15. The ratio between these two classes of stock, in this particular, is 100 to 93.-33. The claims of the two classes of first preferred stock on earnings are in the re-

lationship of 7 to 6, or 100 to 85.71. This is the more important ratio to bear in mind in considering the fairness of the allocations, since the prospect of liquidation of Foreign Power is "extremely remote."

The Commission estimated that the earning prospect for the reorganized company is approximately $15,700,000 per year. After deduction of prior charges, this would amount to prospective earnings of $1.36 per year applicable to each share of the new common stock. Since each publicly-held share of $7 first preferred stock is to receive 3.75 shares of new common stock, the estimated earnings thereon will be $5.10. Since each publicly-held share of $6 first preferred stock is to receive 3 shares of new common stock, the estimated earnings thereon will be $4.08. Thus the ratio of estimated annual earnings in the reorganized company, as between these two classes of first preferred stock, is 100 to 80, which is somewhat less than the ratio of 7 to 6, or 100 to 85.71.

On the other hand, each publicly-held share of $7 first preferred stock is to receive $90 principal amount of 4.8 per cent new debentures; and each publicly-held share of $6 first preferred stock is to receive $80 principal amount of 4.8 per cent new debentures. Thus, the ratio of estimated annual interest payments in the reorganized company, as between these two classes of first preferred stock, is $4.32 to $3.84, or 100 to 88.89, which is somewhat more favorable to the holders of the $6 first preferred stock than the ratio of 7 to 6, or 100 to 85.71.

Putting the two together, the ratio of the estimated annual earnings on the new common stock plus the estimated annual interest payments on the new debentures, as between the two classes of first preferred stocks, is $9.42 to $7.92, or 100 to 84.08, which comes pretty close to the ratio of 100 to 85.71 representing the present relative claims on earnings of the two classes of first preferred stock.

■ This slight discrepancy in the ratios, to the superficial disadvantage of the holders of $6 first preferred stock, is explained by the Commission in its findings, as follows:

"When consideration is given to the fact that a somewhat larger portion of the total claim of the $6 stock is being satisfied with new debentures than is the claim of the $7 stock and considering the higher quality of each dollar of interest as compared with each dollar of earnings and dividends it is apparent that the allocation accorded the two series of preferred stock is in approximately the same relationship as their dividend rates. Accordingly, we find the relative allocations provided in the plan are fair and equitable."

In other words the Commission, in making the allocations as between these two classes of first preferred stock, gave the $6 preferred less than 85.71 per cent of the junior security, the common stock, as to which the estimated annual earnings were necessarily more speculative, but gave the $6 preferred more than 85.71 per cent of the senior security, the new debenture. We are entirely satisfied that the distribution of the new securities, as between these two classes of first preferred stock, was within the "range of tolerance" within which the Commission's judgment as to the fairness of the allocations must be accepted by the courts.

We have considered other arguments advanced by appellant Kantor and content ourselves with stating our conclusion that they are based upon demonstrable mathematical fallacies.

### No. 4636.

■ Appellants in this case are holders of old shares of common stock in Foreign Power and of option warrants for the purchase of common stock. The Commission found as follows:

"The plan proposes to allocate to each share of presently outstanding publicly-held common stock 1/60 of a share of new common stock. Since the common stock has no equity or expectancy in either earnings or assets, the entire allocation must be regarded as representing the common stock interest in the claims assertible against Bond and Share. The present participation is substantially the same as was allocated to the publicly-held common

stock in the 1947 plan. Although we believe the common stocks' claim to participation in the claims settlement is relatively tenuous, we believe this small participation is not so unreasonable as to require our disapproval.

"The plan proposes that the option warrants to purchase common stock be cancelled. Since the common stock is hopelessly under water and there is no conceivable value attaching to the option warrants, fairness requires that they be denied participation. On the basis of the allocation proposed in the plan of one share of new common stock for each 50 shares of the existing common stock each share of new common stock would have to be worth $1250 before the option warrants would have any value. Since it is patent that the option warrants have no prospects of ever having value, there can be no element of unfairness in the provision that the warrants are to be cancelled."

We gather that the Zuckers do not like the treatment accorded to their interests in the plan of reorganization, but we are somewhat at a loss to understand the specific and concrete legal objections which they have to offer to the plan. They have made no real effort to demonstrate that the findings of the Commission, above set forth, are not supported by substantial evidence in the record.

The main contention seems to be that the Commission should first have proceeded under § 11(b) (1) of the Act to enforce an integration of Foreign Power's public utility system; and that until this has been done the Commission is not authorized to proceed with the reorganization and simplification of Foreign Power's corporate structure under § 11(b) (2). Such a contention has many times been rejected by the courts. Commonwealth & Southern Corp. v. S. E. C., 3 Cir., 1943, 134 F.2d 747, 754; American Power & Light Co. v. S. E. C., 1 Cir., 1944, 141 F.2d 606, 614, affirmed 1946, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103; Lahti v. New England Power Ass'n, 1 Cir., 1947, 160 F.2d 845, 850. Consummation of the present plan will in no way prejudice subsequent proceedings under § 11(b) (1) in the discretion of the Commission. It is of course possible that the Commission may eventually exempt Foreign Power from the requirements of § 11(b) (1), as it is authorized to do under § 3(a) (5) of the Act.

### No. 4639.

Appellant Silver was the holder of 800 shares of $7 second preferred stock of Foreign Power. Appellees Foreign Power and Bond & Share have filed a motion to dismiss this appeal, setting forth in the accompanying affidavits that this appellant, prior to filing her notice of appeal herein, surrendered the 800 shares of $7 second preferred stock and received in exchange therefor 680 shares of new common stock of Foreign Power, in pursuance of the plan of reorganization. These facts are admitted in appellant's memorandum in opposition to the motion to dismiss. Appellant has therefore accepted the benefits of the order of the court below approving and enforcing the plan of reorganization, and is now estopped from attacking the order on appeal. The appeal must be dismissed on the authority of In re Electric Power & Light Corp., 2 Cir., 1949, 176 F.2d 687, 689–690.

In Nos. 4635 and 4636, the order of the District Court is affirmed. In No. 4639, the appeal is dismissed.