### In re AMERICAN WATER WORKS & ELECTRIC CO., Inc., et al.
### Civ. A. No. 1008.

United States District Court
D. Delaware.
Sept. 17, 1952.

Myron S. Isaacs, Chief Counsel, Division of Public Utilities, and Robert N. Hislop, of Washington, D. C., for Securities and Exchange Commission.

Oliver B. Merrill and John F. Arning, of Sullivan & Cromwell, of New York City, for West Penn Electric Co.

Norman S. Nemser and Stanley Nemser, of Nemser & Nemser, of New York City, for Hiatt Committee.

Bernard S. Kanton and Maurice Fixel, of New York City, for Galdi Committee.

LEAHY, Chief Judge.

On October 15, 1947, American Water Works and Electric Company, Inc. was liquidated under § 11(b) and (e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(b, e), under two plans approved by the Securities and Exchange Commission and enforced and approved by this court. Under these plans a subsidiary of American, American Water Works Company, Inc., through which American had controlled approximately one-half of its water company subsidiaries, acquired American's other interests and water companies. Water Works was reorganized whereby two of its subsidiaries, Community Water Service Company and Ohio Cities Water Corporation, were liquidated and dissolved. Assets of Community and Ohio Cities were transferred to Water Works. Their public security holders got cash or stock of Water Works, in amounts equal to the investment value of the former securities. American disposed of its interest in Water Works for cash. American was then liquidated by the payment of its outstanding notes, retirement of preferred stock, distribution to its common stockholders of all the outstanding common stock of

West Penn Electric Company, the transfer of its remaining assets to West Penn Electric, and the assumption by the latter company of all American's remaining liabilities up to the amount of the capital contribution received from American.

American's 199,868 shares—entitled to an annual dividend of $6 per share—got $100 per share plus accrued and unpaid dividends to October 15, 1947. There were also issued to the preferred shareholders certificates which would entitle the holders to an additional cash payment if it might later be determined that they were entitled to receive such. As security for the payment on the certificates and for expenses in connection with an escrow which was established, American deposited with the City Bank Farmers Trust Company, of New York, as escrow agent, a non-interest-bearing demand promissory note of West Penn Electric in the amount of $2,200,000.

I entered an order on March 19, 1947 approving the plans, but I specifically reserved jurisdiction to adjudge the fairness and equity of the treatment to be accorded American's preferred stock. The SEC was to make such a finding in the first instance. After full hearings, briefs, proposed decisions, exceptions and oral argument, the SEC found the certificate holders were entitled to receive an additional $10 per share on the preferred stock formerly held by them as of October 15, 1947, with additional compensation for delay in payment from the latter date at a simple interest rate of 5.45% per annum.

The instant proceeding is an application by the SEC under §§ 11(e) and 18(f), 15 U.S.C.A. §§ 79k(e), 79r(f), for enforcement and approval of its supplemental order dated March 17, 1952, which approved the payment of the additional compensation. West Penn Electric has filed 11 objections to the SEC's order. In substance, they raise two points: (1) The charter liquidation preference of American is controlling in determining what is fair and equitable where, as in the instant case, the common stock had a contractual right to liquidate the company;[1] and (2) objections to the SEC's finding that the investment value of Amercan's preferred as of October 15, 1947 was $110 per share. The second point is based upon the failure of the SEC to give effect to the substantial risk of liquidation of American, independent of § 11 of the Public Utility Holding Company Act; the failure to compare American's preferred with securities of comparable risk; and the lack of substantial evidence on the whole record to

1. The text of the charter provision is:
"In the event of any liquidation, dissolution or winding up of the affairs of the Corporation, whether voluntary or involuntary, the holders of shares of the First Preferred Stock at the time outstanding shall be entitled to be paid in cash One hundred dollars ($100) per share, together, in the case of each share of First Preferred Stock, with a sum computed at the annual dividend rate for the series of which the particular share is a part, from the date on which dividends on the particular share became cumulative to the date fixed for the payment of such distributive amounts, less the aggregate amount of dividends theretofore paid thereon, before any distribution or payment shall be made to the holders of the Common Stock. In the event the assets of the Corporation shall be insufficient to provide payment in full of the distributive amounts to which the holders of the First Preferred Stock shall be so entitled, such assets to the extent necessary to provide for payment of One hundred dollars ($100) per share on the First Preferred Stock shall be divided equally among the holders thereof, and any assets remaining shall be apportioned among and paid ratably to the holders of the First Preferred Stock of each series according to the respective dividend rates thereof. The holders of the First Preferred Stock shall not be entitled to receive any distributive amounts upon the liquidation, dissolution or winding up of the affairs of the Corporation other than the distributive amounts referred to in this paragraph.
* * * * *
"In the event of any liquidation, dissolution or winding up of the affairs of the Corporation, whether voluntary or involuntary, all assets and funds of the Corporation remaining after the payment to the holders of the First Preferred Stock of the full amounts to which they shall be entitled, as hereinbefore provided, shall be divided and distributed among the holders of the Common Stock according to their respective shares."

support the SEC's conclusion on investment value.

The other parties to the present proceeding are two committees representing certain of American Water Works and Electric Company's 6% preferred. One is the Hiatt Committee and the other is the Galdi Committee. They both seek approval and enforcement of the SEC's present application. The Galdi Committee seeks, however, a modification of the escrow.

█ 1. I do not think the SEC committed error, as a matter of law, in holding the charter liquidation provisions of American's preferred as not controlling. The retirement of the preferred was to effect compliance with the requirements of § 11 (b). Accordingly, the charter liquidation provisions of the preferred stock are not controlling. The question whether liquidation, in a case such as this, is effected to comply with the requirements of the Act has been definitely answered to the effect that the applicable standards of the Act, including the fair and equitable standard of § 11(e), must govern such liquidation; and former arguments in other cases that the rights of preferred shareholders must be determined solely by reference to the charter liquidation provisions, as under state law, have been definitely rejected. Otis & Co. v. S.E.C., 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; Securities and Exchange Comm. v. Central-Illinois Securities Corp., 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836; Schwabacher v. U. S., 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305; Niagara Hudson Power Corp. v. Leventritt, 340 U.S. 336, 71 S.Ct. 341, 95 L.Ed. 319; Cf. Lahti v. New England Power Ass'n, 1 Cir., 160 F.2d 845; In re Pennsylvania Edison Co., 3 Cir., 176 F.2d 764; Federal Liquidating Corp. v. S.E.C., 2 Cir., 187 F.2d 804; certiorari denied 341 U.S. 949, 71 S.Ct. 1016, 95 L.Ed. 1372; In re New England Public Service Co., D.C.Me., 73 F.Supp. 452; In re Electric Bond & Share Co., D.C.,S.D.N.Y., 95 F.Supp. 492; certiorari denied 341 U.S. 950, 71 S.Ct. 1018, 95 L.Ed. 1373. The SEC made a specific finding—which I find supported by substantial evidence—that the dissolution of American was not motivated by business considerations on the part of the director-management. And thus, I think, the SEC was not in error in holding that American may not maintain that charter liquidation provisions of its preferred stock must control as a matter of law.

█ 2. The Commission's informed judgment as to valuation of the worth of the preferred must be tested in the district enforcement court by the "substantial evidence" and "accordance with legal standards" rules. Such judgment is entitled to great weight. Securities and Exchange Comm. v. Central Illinois Corp., supra; Niagara Hudson Power Co. v. Leventritt, supra; Federal Liquidating Corp. v. S.E.C., supra. I think the SEC properly valued the preferred on a going-concern basis. In so doing, the SEC considered the risk of liquidation independent of § 11 and made a finding there was no substantial likelihood of such liquidation action, i. e., the risk of liquidation factor was, therefore, not entitled to any substantial weight in determining the investment value of the preferred. The SEC's analysis of the various factors to be considered in fixing the investment value of the preferred is searching and convincing. I think the SEC's determination of investment value was arrived at in accordance with legal standards and is supported by substantial evidence when the whole record is considered. As I said before, the finding of the SEC was based upon careful analysis of the comprehensive record made in this litigation. Applying the applicable standards of review permitted to an enforcement court, I can find no error in the order which the SEC seeks to have enforced in this court.

█ 3. One further matter remains for disposition. During the course of the proceedings before the SEC, the Galdi Committee sought a modification of the SEC's order of February 17, 1947 to require that West Penn Electric substitute $3,000,000 cash for the $2,200,000 West Penn Electric promissory note which constitutes the escrow fund. The SEC denied the motion without prejudice to renewal. At the conclusion of the hearings, the Galdi Committee renewed its motion; once again, it was denied, the SEC stating it "will require that West Penn following court en-

354

forcement shall deposit an amount sufficient to make the additional payments." Argument was made before me that the fund is presently inadequate and should be transferred from a debt-note to cash. The placing of cash in escrow to protect the interests of security holders at the direction of the SEC has been sanctioned in former cases.[2] Also, such cash escrows have been sanctioned in this court, at the enforcement level, in Securities and Exchange Comm. v. Central-Illinois Securities Corp., supra.[3] I think that serious consequences resulting in complex delays might result from disturbing the present escrow arrangement. As far as the enforcement court is concerned, I see no urgent necessity to transmute the present demand note into $3,000,000 in cash.

An order may be submitted providing for approval of the supplemental application of the commission.

---

**2.** See Holding Company Act Releases Nos. 7041, 8850, 9981 and 9982.

**3.** In re Engineers Public Service Co., D.C. Del., 71 F.Supp. 797, affirmed 3 Cir., 168 F.2d 722.