**PROTECTIVE COMMITTEE FOR CLASS A STOCKHOLDERS OF INTERNATIONAL HYDRO-ELECTRIC SYSTEM et al. v. SECURITIES AND EXCHANGE COMMISSION.**

No. 14, Docket 21592.

United States Court of Appeals Second Circuit.

Argued Oct. 6, 1950.

Decided Oct. 24, 1950.

Mortimer A. Shapiro, Nemerov &. Shapiro, New York City, Louis Kipnis, New York City, Leonard Brunner, Brooklyn, N. Y., on the brief, for petitioners.

Roger S. Foster, Washington, D. C., Harry G. Slater, Chief Counsel, Division of Public Utilities, Robert S. Keebler, Washington, D. C., W. Victor Rodin, Philadelphia, Pa., Attorneys, Securities and Exchange Commission, for respondent.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

PER CURIAM.

On July 21, 1942, the Securities and Exchange Commission in a proceeding under § 11 of the Public Utility Holding Company Act of 1935,[1] directed the dissolution and liquidation of the International Hydro-Electric System, a holding company, whose assets consisted for the most part of shares

1. § 79k, Title 15 U.S.C.A.

in other holding companies, some of which held shares in still other holding companies. Todd, a "Class A Stockholder," appealed from that order, but it was affirmed,[2] and the simplification of the holdings of the International Hydro-Electric System and of a number of its subsidiaries proceeded until 1949, when the trustee filed a second "plan for liquidation and dissolution." A few days after the trustee filed this plan, Todd filed an application with the Commission for a modification of the order of July 21, 1942, based upon the power granted the Commission by the last sentence of § 11(b) (2) of the Act to modify its orders if "it finds that the conditions upon which" they were "predicated do not exist." The Commission denied this petition upon the ground that the conditions had not changed; and Todd did not petition to review the denial; but the Protective Committee of the Class A Stockholders (Davis, McGrath and Barnett) and Kroese, an individual stockholder, did so, and it is their petition which now comes before us.

The petitioners' argument is that the original order of July 21, 1942, had proceeded on the theory that there was no "economic justification for existence as a holding company" of International Hydro-Electric System, and that "the economic function and purpose of a company in its holding company (sic) are proper subjects of inquiry." The petitioners argue that these are not proper standards under the Act; the Securities and Exchange Commission on the other hand argues that its power to "ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure,"[3] makes exactly such considerations relevant, and that in the case at bar the conditions had not so changed as to require any modification of its order of July 21, 1942. We hold that the Commission is right in concluding that the elimination of undue and unnecessary complication in a corporate structure involves an inquiry into the "economic justification," if any, for the "continued existence" of a holding company; and that in

the case at bar the Commission was right in finding that there was no such "justification" for the "continued existence" of the International Hydro-Electric System.

One provision of the trustee's second plan has been put through, resulting in a reduction of a series of debenture bonds, and no objection has been raised to that part of it. Another provision is for the International Hydro-Electric System to sell some of its shares in a Canadian operating company and to use the proceeds together with those of a $10,000,000 bank loan to pay off the remainder of its debentures. Lastly, the plan provides that the International Hydro-Electric System shall distribute its remaining assets among its preferred and "Class A" shareholders in a proportion not here involved. The remaining assets at their "book value" after the cancellation of the debentures will be as follows: about $4,000,000 of the Canadian shares; $57,000,000—now much reduced in value—of shares of a holding company called the New England Electric System; about $10,000,000 of shares of the Eastern New York Power Corporation, an operating company; and all the shares in two other small operating companies. Although the New England Electric System is a holding company, yet, because the International Hydro-Electric System holds only eight per cent of its shares, it does not count in determining whether the International Hydro-Electric System is itself a holding company.

■ The first question, as we have said, is of the power to dissolve a holding company because it has ceased to have any "economic justification." Section 11(a) of the Act directs the Commission "to examine the corporate structure of every registered holding company" for three purposes: (1) "to determine the extent to which the corporate structure * * * may be simplified"; (2) to determine the extent to which "voting power" may be "fairly and equitably distributed"; and (3) to determine the extent to which "the properties and business" may be "confined to those necessary or appropriate to the operations of

2. Todd v. Securities and Exchange Commission, 6 Cir., 137 F.2d 475.

3. § 11(b) (2).

an integrated · public-utility system." An "integrated" system is made up of one or more operating "units," so "physically inter-connected or capable" of being, that they can be "economically operated as a single interconnected and coordinated system confined in its operation to a single area or region"—§ 2(a) (29) (A), 15 U.S.C.A. § 79b (a) (29) (A). Section 11(b) gives powers to the Commission which Congress deemed necessary to realize the three purposes just mentioned. Subdivision (1) relates to the third purpose; it directs each holding company and its subsidiaries to do whatever the Commission "shall find necessary to limit" its "operations" to those of a "single integrated public-utility system". (There are several provisos under which the Commission may allow control over one or more such "systems," but they need not concern us.) Nothing in this subdivision provides for the dissolution of the holding company. Section 11(b) (2) relates to the two other purposes of § 11(a), (1) "simplifying" the capitalization of holding companies; and (2) securing a fair distribution of "voting power." It is this subdivision alone which provides for the dissolution of a holding company, not only expressly in the second sentence; but also in the first sentence by the words "ensure that the * * * continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure". The two subdivisions are not mutually exclusive; there is no reason why the "capital structure" of a "system" may not be "unnecessarily complicated," even though the holding company has "limited" its "operations" to those of "a single integrated public-utility system." The two purposes are indeed separate; but, if it be true that a holding company contributes no benefit to the "operations" of an "integrated * * * system," surely its "existence" may "unduly or unnecessarily complicate the structure" of the two taken as a whole; and the Commission cannot "ensure" that the holding company's "existence" shall not continue to do so without dissolving it. In short, we cannot understand how the determination of these issues is different from a determination of the "economic justifica-tion" for the "continued existence" of the holding company.

Nor does the second sentence of § 11(b) (2) throw doubt upon this conclusion. It requires the Commission to compel a holding company to cease to be such as to any of its subsidiaries that are themselves holding companies; but there is no reason why this command should deprive the Commission of power in a proper case to reduce the complication of a holding company's capitalization in spite of the fact that its subsidiaries are operating companies. Indeed, were that not true, the Commission, when dealing at the outset with a colony of intricately subinfeudated companies would be obliged to stop unravelling them as soon as it reached any holding company which owned only the shares of an "integrated public-utility system," however otiose the "continued existence" of the holding company might then become. Certainly that is not in accord with the preamble of the statute: "to compel the simplification of public-utility holding-company systems * * * and to provide" for their elimination—§ 1 (c), 15 U.S.C.A. § 79a (c).

▐▌ The remaining question is whether, if the Commission's powers go so far, it has abused them in this instance. The petitioners put forward only two reasons to show that the "continued existence" of the International Hydro-Electric Company has not become "unnecessary." One is that the company has suffered a large loss in its holdings of New England Electric System shares, which can be made available to the company's shareholders as tax deductions only if the shares be not distributed, or sold; the second is that the business of the Eastern New York Power Corporation is growing rapidly and will need financing, which will be made possible by selling the remaining shares of Canadian stock and the eight per cent holdings of New England Electric System shares. It seems to us at best open to debate whether a saving of taxes to the shareholders of a holding company is any ground, or at least a compelling ground, for continuing its existence, when otherwise it should be dissolved. However, we need not decide that question, and we do not, because in the case at bar the Commis-

sion has found—upon evidence that it was free to accept—that only the larger shareholders of the International Hydro-Electric System could save upon their taxes if the shares of the New England Electric System were not distributed or sold. Even though we were to assume that a tax saving by shareholders is ever a proper ground for finding that the simplification of a holding company's "capital structure" is "unnecessary," certainly we should not be justified in saying that a saving in taxes by only a part of the shareholders compels such a finding. Finally, the probable future needs of the Eastern New York Power Corporation, and its ability to finance them by direct issues were incontestably matters as to which the Commission's judgment was conclusive.

Order affirmed.