**DOWNING et al. v. SECURITIES AND EX-CHANGE COMMISSION et al.**

**No. 11158.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 12, 1952.

Decided March 31, 1953.

Rehearing Denied April 22, 1953.

Mr. Randolph Phillips, pro se, with whom Messrs. Seymour Krieger and Norman E. Jorgensen, Washington, D. C., were on the brief, for petitioners Randolph Phillips and 22,081 Stockholders of The United Corp. Messrs. Seymour Krieger and Norman E. Jorgensen, Washington, D. C., were on the brief for petitioner Edward R. Downing.

Mr. Roger S. Foster, General Counsel, Securities and Exchange Commission, Washington, D. C., with whom Mr. Aaron Levy, Attorney, Securities and Exchange

Commission, Washington, D. C., was on the brief, for respondent. Mr. Louis Loss, Washington, D. C., also entered an appearance in behalf of the respondent.

Mr. Richard Joyce Smith, New York City, of the bar of the Court of Appeals of the State of New York, pro hac vice, by special leave of Court, with whom Mr. Harold F. Noneman, Washington, D. C., was on the brief, for The United Corp., intervenor. Mr. James K. Polk, New York City also entered an appearance in behalf of The United Corp., intervenor.

Mr. John Mulford, Philadelphia, Pa., with whom Mr. M. Quinn Shaughnessy, Washington, D. C., was on the brief, for The General Protective Committee for Holders of Option Warrants of The United Corp., intervenor.

Before WILBUR K. MILLER, PRETTYMAN and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The Securities and Exchange Commission, after hearings in a proceeding theretofore duly instituted, entered an order August 14, 1943, requiring United Corporation, registered under the Public Utility Holding Company Act of 1935,[1] to reduce its capitalization to one class of stock, to cease to be a holding company, and to comply with the order with due diligence. The order was entered pursuant to § 11(b) of the Act.

Thereafter United simplified its capital structure by retiring its preferred stock and since April 30, 1949, has had only common stock outstanding. By that date, United also had divested itself of its subsidiaries, except that it still held more than 10 per cent of the voting securities of South Jersey Gas Company, and 2,818,397 shares of Niagara Hudson, constituting approximately 28½ per cent of the total voting stock of that corporation. United filed with the Commission a proposal to distribute to its stockholders one share of Niagara Hudson for each ten shares of United held by them. The SEC approved by an order of October 20, 1949, pursuant to which United distributed to its stockholders 1,442,973 shares of Niagara Hudson and paid them $158,401 in cash, thus reducing its holdings to about 14 per cent of the total voting securities of Niagara Hudson.

One Randolph Phillips, a stockholder of United, filed with us a petition to modify the Commission's order of October 20, 1949, so as to require United immediately to distribute to its stockholders all its Niagara Hudson common stock and to sell within three months all its remaining investments in its subsidiaries. This we refused to do. Phillips v. Securities & Exchange Commission, 1950, 87 U.S.App.D.C. 380, 185 F.2d 746. We held the Commission had not abused its discretion in authorizing a partial distribution of United's holdings of Niagara Hudson common. We pointed out that under the Act the company's management has primary responsibility for the preparation of a plan of compliance therewith, and that Phillips could suggest his plan for the dissolution of United when the company submitted a plan of reorganization.

United later proposed, pursuant to § 11(e) of the Act, a plan designed to comply with § 11(b) and with the Commission's order thereunder. It provided for a limited offer permitting United's stockholders to withdraw and, depending on the number of shares held, to receive either cash or a specified number of shares of the common stock of Niagara Mohawk Power Corporation,[2] then owned by United. The plan also provided for the cancellation of United's outstanding option warrants, the sale of all its South Jersey common stock, the amendment of its certificate of incorporation to provide for cumulative voting for the election of directors, the amendment of its by-laws to increase the quorum requirement at stockholders' meetings, and for the reduction by United of all its holdings of voting securities of public utilities companies to an amount not to exceed 4.9 per

---

1. 49 Stat. 803, 15 U.S.C.A. § 79 et seq.

2. On February 9, 1950, the Commission ordered United to exchange its remaining Niagara Hudson stock for stock in Niagara Mohawk Power Corporation, a new operating company in the same system.

cent of the outstanding voting stock of those companies, with a view to transforming United into an investment company.

The Commission held extensive hearings with respect to the proposal and on June 15, 1951, delivered an exhaustive opinion which analyzed the plan and approved it in the main, but pointed out that full approval could not be given unless the plan were amended in accordance with its views. Immediately thereafter United filed amendments designed to meet the requirements of the Commission's opinion, and apparently asked that enforcement be sought in a district court.

After considering the amendments, the Commission found the plan for the reorganization of United, as so amended, necessary to effectuate the provisions of § 11(b) of the Act, and fair and equitable to the persons affected by it. It therefore approved the plan by an order dated June 26, 1951, subject to terms and conditions concerning the consummation thereof and the retention of jurisdiction with respect thereto, all of which were carefully spelled out, and subject also to this condition:

"1. The order entered herein shall not be operative to authorize the consummation of the provisions of the plan as amended relating to the cancellation of United's option warrants or to the amendment of United's Certificate of Incorporation or By-Laws until an appropriate United States District Court shall, upon application thereto, enter an order enforcing said provisions."

On August 23, 1951, Edward R. Downing, a stockholder of United, and Randolph Phillips, also a stockholder and attorney in fact for 22,081 other stockholders, filed with us a petition to review the Commission's order of June 26, 1951, which approved the plan, and also certain orders entered by the Commission February 7 and February 25, 1947.[3] They prayed that we enter an order

forthwith enforcing the provisions of the plan concerning cumulative voting and the quorum requirements, and that in other respects we "modify or set aside in whole" the three orders; that we permanently enjoin United and the SEC from seeking to enforce in any other court the order of June 26, 1951.

The petitioners further prayed that we grant them leave to adduce additional evidence to sustain charges contained in the petition for review that the members of the Commission and its staff from April, 1943, through 1950 engaged in private conversations with officials of United, and made private and secret arrangements under which the Commission and its staff agreed not to seek dissolution of United, and also agreed prior to hearing to decide in United's favor "certain applications * * * relating to the present proceedings." Petitioners did not describe the applications to which they referred. They prayed also for the immediate entry of an order enforcing the uncontested provisions of United's plan of reorganization.

We denied, on November 5, 1951, petitioners' motion for entry of an order enforcing uncontested provisions of the plan and their motion for leave to adduce additional evidence, without prejudice to renewal at the hearing on the merits; and we denied petitioners' motion for a stay of the Commission's order of June 26, 1951, except we stayed the order insofar as it approved the portion of the plan which provides for disposition of United's common stock in Niagara Mohawk.

The motion of the General Protective Committee for Holders of Option Warrants of United for leave to intervene, heretofore deferred until submission of the case on the merits, will be granted. On January 2, 1952, that committee filed a "Motion for Leave to File a Motion" for leave to adduce additional testimony, which was denied January 30, 1952. The motion was renewed

---

3. Petitioners sought review of the two February, 1947, orders in the Second Circuit. The court held the orders interlocutory and therefore not reviewable. Phillips v. Securities Exchange Commission, 2 Cir., 1948, 171 F.2d 180. These orders had to do with the controversial stockholders' meeting hereinafter mentioned.

July 23, 1952, by the General Protective Committee and on August 26, 1952, it moved for leave to file a statement of points and authorities in support of the renewed motion. Both motions will be denied.

The petitioners have renewed their motion for an order enforcing the uncontested provisions of the plan and the provision relating to the option warrants. This motion will be denied as, for the reasons hereinafter set out, we do not have power to enforce a plan of compliance which has been approved by the Commission. The petitioners have also renewed their motion for leave to adduce additional evidence, as they were permitted to do by our previous order, and have filed an additional memorandum in support thereof. A brief discussion of the background is necessary to an understanding of the motion. As we have noted, the Commission on August 14, 1943, ordered United to cease to be a holding company but did not direct dissolution. Some four months theretofore one William M. Hickey, formerly a member of the Commission's staff, had become president of United. In a subsequent phase of the proceeding, in 1944, Hickey testified, and in the course of cross-examination indicated that after he became president of United and before the decision and order of August 14, 1943, he had talked privately with members of the Commission and that those conversations had influenced the decision. Petitioners say that after that much had been said, counsel for United objected to the line of questioning, the trial examiner sustained the objection, and further development of the subject was not permitted. It is with respect to this matter that petitioners have moved for leave to adduce additional evidence.

Were the order of August 14, 1943, now under review, we would probably grant the motion and remand the case to the Commission to take testimony concerning the conversations the witness Hickey said he had with members of the Commission between April, 1943, and August 14, 1943, about the content and nature of the order then entered by the Commission, which purportedly was pursuant to formal hearings and argument which had been closed before the conversations occurred. But the order of August 14, 1943, is not subject to review in this proceeding. Moreover, it is fair on its face and is not, we think, basically unsound, as will appear from our discussion hereafter of points raised in connection with the order we are reviewing. We shall, therefore, deny the petitioners' motion for leave to adduce additional evidence as to Hickey's conversations with the Commission in 1943.

I

The Commission asserts that the petitioners are not aggrieved, within the meaning of § 24(a), by its order approving the plan of compliance because they have not exhausted their "opportunity to be heard" in a district court enforcement proceeding under § 11(e), although the Commission has instituted no such proceeding. This amounts, of course, to an assertion that a Commission-approved plan may not under any circumstances be reviewed by a court of appeals under § 24(a), and that any person aggrieved by such a plan must in the first instance present his objections to a district court in an enforcement proceeding. That is as it should be, the Commission says, because "the general review provisions of Section 24(a) should not be construed so as to negate the specialized scheme of judicial review under Section 11(e)."

This challenge to our jurisdiction makes it necessary to examine the sections of the Act which deal with judicial review of the Commission's orders. Section 24(a), which confers upon us the authority to review any order of the Commission at the petition of one aggrieved thereby, is in part as follows:

"* * * Any person or party aggrieved by an order issued by the Commission under this title may obtain a review of such order in the United States court of appeals within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a

written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall be forthwith served upon any member of the Commission, or upon any officer thereof designated by the Commission for that purpose, and thereupon the Commission shall certify and file in the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission or unless there were reasonable grounds for failure so to do. The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. * * *"

In contrast with the broad power of direct review which the foregoing section gives to an appellate court, the jurisdiction given to a district court is limited by § 11(e) to a review of a Commission order approving a plan of compliance, and may not be exercised unless and until the Commission applies for enforcement of its order. A portion of § 11(e) follows:

"* * * If, after notice and opportunity for hearing, the Commission shall find such plan, as submitted or as modified, necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected by such plan, the Commission shall make an order approving such plan; and the Commission, at the request of the company, may apply to [an appropriate district] court, in accordance with the provisions of subsection (f) of section 18, to enforce and carry out the terms and provisions of such plan. If, upon any such application, the court, after notice and opportunity for hearing, shall approve such plan as fair and equitable and as appropriate to effectuate the provisions of section 11, the court as a court of equity may,

to such extent as it deems necessary for the purpose of carrying out the terms and provisions of such plan, take exclusive jurisdiction and possession of the company or companies and the assets thereof, wherever located; * *."

The respondent Commission cites no authority to support its thesis that a company's plan of compliance approved by the Commission cannot be judicially reviewed except in a district court enforcement action. It does say, however, after stating its theory, that petitions for review under § 24(a) have been dismissed, on grounds upon which it now relies, in the following cases: Okin v. Securities & Exchange Commission, 2 Cir., 1944, 145 F.2d 206; Lownsbury v. Securities & Exchange Commission, 3 Cir., 1945, 151 F.2d 217; Blatchley v. Securities & Exchange Commission, 1 Cir., 1946, 157 F.2d 898; Goldfine v. Securities & Exchange Commission, 1 Cir., 1946, 157 F.2d 899; and Leventritt v. Securities & Exchange Commission, 2 Cir., 1949, 178 F.2d 336, 337. We summarize those decisions.

In the Okin case the Commission approved a plan September 7, 1944, and instituted an enforcement proceeding in the Delaware District Court September 8, 1944. The Commission moved to dismiss Okin's petition for review under § 24(a), filed September 20, 1944, on the ground that jurisdiction to review the plan and all objections to it had already vested in the district court. In dismissing Okin's petition under § 24(a), the Court of Appeals for the Second Circuit made observations as to the relation between the two sections of the statute to which we shall refer later. Obviously the simple ground for dismissal was, as urged by the Commission, that the reviewing jurisdiction of a district court had attached before Okin filed under § 24(a).

The Commission approved a plan in the Blatchley case October 11, 1945, and on October 15, 1945, filed a petition for enforcement in the Maine District Court, pursuant to which that court entered on October 25, 1945, an order enforcing the approved plan. On December 10, 1945,

Blatchley filed with the First Circuit a petition to review the Commission's order of October 11 under § 24(a). The petition was dismissed on authority of the Okin and Lownsbury cases. In like circumstances, the First Circuit dismissed the petition for review under § 24(a) in the Goldfine case.

A similar situation was presented in Leventritt v. Securities & Exchange Commission. There the Commission approved a plan, and on August 26, 1949, instituted an enforcement proceeding in a district court. Leventritt's petition for review under § 24(a) was filed September 12, 1949. The Second Circuit construed the Okin, Lownsbury and Blatchley cases as being to the narrow effect

"* * * that a petition for review cannot be prosecuted in the Court of Appeals under Section 24(a) if an enforcement proceeding under Section 11(e) is pending in the District Court."

The court decided to follow that ruling, and dismissed the petition for review under § 24(a).

From the foregoing analyses, it is apparent that four of the five cases cited by the Commission have no application here because in each of them an enforcement proceeding had been filed in the district court before review of the order of approval was sought under § 24(a), whereas in this case the Commission had not instituted an enforcement action in the district court when the petition for review was filed with us.

The facts in Lownsbury v. Securities & Exchange Commission, one of the five cases cited by the Commission, differed from those of the other four in that no district court enforcement proceeding was pending when Lownsbury applied to the Third Circuit for review under § 24(a). The court pointed out that the orders of approval involved expressly stated they were "not to be deemed operative to authorize any of the transactions contemplated by the plan until a District Court has entered an order enforcing the plan," and that the orders also conditioned the effectiveness of the plan upon its approval by vote of the corporation's shareholders, prior to submission to a district court. The court nevertheless regarded Okin v. Securities and Exchange Commission as completely in point and on that authority dismissed the petition for review under § 24(a).

The Lownsbury case differs from ours in two respects: (a) the effectiveness of the entire plan was conditioned on the subsequent entry of a district court order enforcing the reorganization arrangement, although it does not appear that such enforcement had been asked, whereas here only the phases of the plan concerning the cancellation of warrants and the amendment of the company's charter and by-laws are so conditioned, and the effectiveness of the remainder of the plan is not deferred; (b) in Lownsbury it was provided that the plan should not be effective or be submitted to a district court until it had been approved by the company's shareholders, whereas in this case there is no such condition.

For reasons which will be given later in this opinion, we think the Commission cannot make its approval of a plan contingent upon a district court's later approval, and cannot condition the effectiveness of the plan upon enforcement by a district court. Regardless of that, however, it seems to us that the provisions of the Commission's order of approval in the Lownsbury case, which made the effectiveness of the plan dependent upon ratification by the company's stockholders, was a condition which the Commission had a right to impose. As the stockholders' approval might never be obtained, it is reasonable to regard the order of approval as interlocutory until the stockholders had ratified, and consequently the dismissal of the petition for review under § 24(a) was justifiable on that ground. That being so, we do not regard the Lownsbury opinion as persuasive here.

Although the bases of decision in the cases cited by the Commission make them inapplicable to the present situation, there are statements in some of the opinions which tend to support the Commission's theory that § 11(e) sets up, with respect to

approved plans of compliance, "a specialized scheme of judicial review" by a district court which precludes review of such plans by a court of appeals under § 24(a). We regard those statements as *obiter dicta* and we further think they have been rendered nugatory by a subsequent Supreme Court decision to which reference will be made hereinafter.

For example, although the simple basis for the Okin decision was, as we have pointed out, that district court jurisdiction had first attached, the court made the following statements in the course of its opinion, 145 F.2d at page 207:

"* * * The provisions of § 11 compel full review of an order such as this in a district court for all parties in interest, thus making limited reviews for single parties in interest in other courts quite intolerable for the conflicts in jurisdiction which must result; and the broad scope of review stated in § 24 becomes in terms inapplicable because of the interlocutory nature of the Commission's action in the circumstances." [4]

And later, 145 F.2d at page 208, it said:

"* * * It is hardly conceivable that a petition for review by a single individual should bar proceedings on the plan in the district court; * * * since the district court has the ultimate responsibility for determining whether the plan is fair and equitable, it would seem that in final analysis that court must have authority to nullify any opposing action of any other court."

The opinion also indicates that the court accepted "the contention that § 11(e) provides for an orderly method of review other than that contemplated by § 24(a)."

It thus appears that, in the Okin and Lownsbury cases and in the other cases which approve and rely upon them, the courts expressed the view for which the Commission now contends: that § 11(e) affords the only rational, workable and consistent method of reviewing plans of compliance and that it would be "quite intolerable" for courts of appeals to review such plans under § 24(a) under any circumstances. This view presupposes, as indeed the Okin opinion says, "that § 11(e) provides for an orderly method of review other than that contemplated by § 24(a)," the implication clearly being that a review of such a plan under § 24(a) would not be orderly or satisfactory.

The notion that a district court has primary responsibility for determining whether a plan is fair and equitable, and is the only forum in which a Commission order of approval may be reviewed, was dissipated by Securities & Exchange Commission v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836.[5] There the Supreme Court made it plain that §§ 24(a) and 11(e) afford alternative methods of reviewing Commission orders such as that now before us. "Both sections are parts of the same statute," said the Court, 338 U.S. at page 124, 69 S.Ct. at page 1392, "designed to give effect to the same legislative policies and to secure uniform application of the statutory standards." It was held that review in a district

---

4. In the Okin case the Commission contended

"* * * that the general provision for review of Commission orders at the behest of a single person must yield to the particular authority given a single district court to pass upon the provisions of a plan as fair and equitable and to enforce it."

It also contended that, as the statute makes the approval of the district court a condition precedent to judicial enforcement of the plan, its order of approval was interlocutory for that reason and also for the reason that the terms of the order made the plan operative only upon the entry of an enforcement order by the appropriate district court. The court of appeals seems to have accepted these arguments.

5. This case followed, in point of time, all the cases cited by the Commission except Leventritt v. Securities & Exchange Commission. Leventritt does not adopt the *dicta* of the Okin opinion but describes its holding as merely being that when a district court has taken jurisdiction under § 11(e) it cannot be ousted by a § 24(a) proceeding subsequently filed. That holding was not disturbed by Central-Illinois.

court under § 11(e) is no broader than that by an appellate court under § 24(a) and is subject to the same limitations, including that which makes conclusive the Commission's findings of fact, if supported by substantial evidence. Neither court may substitute its judgment for that of the expert Commission on the technical and complicated factual questions involved. Since the scope and nature of review under the two sections are identical, § 11(e) does not provide "a specialized scheme of judicial review."

Why did Congress provide, as an alternative to the conventional appellate court review of agency orders set out in familiar language in § 24(a), an identical procedure for review in a district court? The answer is that it did not do so merely to afford an alternative review in a different court, but did so as an incident to the accomplishment of a different legislative objective. That is to say, the primary purpose of Congress in enacting § 11(e) was to enable the Commission to invoke the authority of a district court for enforcement purposes; the reviewing power of the district court is incidental to that purpose. This appears from the following passage in the Central-Illinois opinion, 338 U.S. at page 125, 69 S.Ct. at page 1392:

> "Indeed we think it is fair to conclude that the primary object of § 11(e) was not to provide a highly different scope of judicial review from that afforded by § 24(a), but was to enable the Commission, by giving it the authority to invoke the court's power, to mobilize the judicial authority in carrying out the policies of the Act.

To do this the court 'as a court of equity' was authorized to 'take exclusive jurisdiction and possession of' the company or companies and their assets and to appoint a trustee to hold and administer the assets under the court's direction."

It will be observed that the district court review is not available to any person or party aggrieved by a plan of compliance. Only the Commission can file with that court the petition for enforcement which gives rise to a review of the plan itself. Nevertheless the district court's review is a full-fledged one, and when it takes jurisdiction, that jurisdiction is exclusive. In like manner, a court of appeals has exclusive jurisdiction to approve, modify or set aside the plan as soon as the Commission has filed its transcript. In contrast to the district court proceeding, the remedy in a court of appeals is available to any person or party aggrieved by the projected reorganization.

The review procedures of §§ 11(e) and 24(a) must be harmonized and reconciled, if possible. We think it is easily done by invoking the familiar principle that the court which first obtains jurisdiction will retain it to the exclusion of other courts. Thus unseemly conflict is avoided.[6]

Accordingly, we think that, so long as a petition to review its order of approval has not been filed with a court of appeals under § 24(a), the Commission may apply under § 11(e) to a district court to enforce an approved plan, whereupon the exclusive jurisdiction of the district court attaches; the Commission's order cannot then be re-

6. Cf. the following from Phillips v. Securities Exchange Commission, 2 Cir., 1946, 153 F.2d 27, 29:

"It seems now settled that conflicts in jurisdiction as between courts must be avoided, and hence that a circuit court of appeals will not pass upon a shareholder's petition for review while all equities may be adjusted by a district court in a pending proceeding brought by the Commission for enforcement of its order."

The court went on to say that the language of the statute to the effect that the Commission "may in its discre-

tion" apply for enforcement is clearly permissive. This choice of language cannot be considered inadvertent and seems unusually explicit, said the court. It was also pointed out that the Commission had theretofore taken the position that it need not apply for enforcement under § 11(d) where such action is not necessary. (Section 11(d) provides for district court enforcement of a plan of compliance prescribed by the Commission, while § 11(e) deals with such enforcement of a plan submitted by a company and approved by the Commission.)

viewed by a court of appeals on the petition of an aggrieved party which is subsequently filed. On the other hand, so long as the Commission has not applied to a district court to enforce an approved plan, any person aggrieved by the proposed reorganization may petition a court of appeals to review the Commission's order of approval. Thereupon, that court has exclusive jurisdiction to affirm, modify or set aside the order, and the Commission cannot apply to a district court for enforcement until the court of appeals has entered judgment affirming or modifying the plan.

■ It should be observed that a court of appeals has no power to enforce a plan of compliance; when it has affirmed or modified a Commission order of approval, the Commission may then apply to a district court to obtain enforcement. In that event, the district court has no function except to enforce, since affirmance by the court of appeals necessarily held the plan necessary to effectuate the provisions of § 11(b) and fair and equitable to the persons affected thereby, and its ruling is res judicata as to those questions.

Since in the present case the Commission had not applied to a district court to enforce the plan when the petitioners requested this court to review the order of approval, we have exclusive jurisdiction to affirm, modify or set aside the Commission's order, but we have no power to enforce the plan should we affirm.

There remains to be considered the Commission's contention that we lack jurisdiction to review that phase of the plan which requires the option warrants to be cancelled, because it conditioned consummation of that provision upon a district court's subsequent approval and enforcement thereof; although no enforcement proceeding has been instituted.

■ It may be here, as the Court of Appeals for the Third Circuit surmised in the Lownsbury case, 151 F.2d at page 218, that

"The conditional nature of the Commission's order is apparently a method of so framing its mandate as to avoid the seeming inconsistency involved in sections 11(e) and 24(a) of the statute."

If that were the Commission's purpose in the present case it should not be countenanced. The Commission cannot frame an order of approval so as to give to an unnamed district court, to which it has not applied for enforcement, exclusive jurisdiction to review the plan approved, thus shutting the door against review by a court of appeals under § 24(a). To be sure, the Commission might achieve that practical result by applying for district court enforcement immediately after approving the plan, and before any aggrieved person could petition for review under § 24(a);[7] but the result cannot be reached by the ruse suspected by the court in the Lownsbury opinion.

We are of the opinion that the language of the Commission's order with respect to the warrants did not have the effect of causing the exclusive jurisdiction of a district court to attach to that phase of the plan, nor to the plan as a whole. In order to ascertain what effect, if any, that language had upon our own jurisdiction, it is essential to determine the significance of the qualifying provision concerning the option warrants. Does the provision mean that the Commission's approval of that part of the plan is contingent upon later approval by a district court, that is to say, was the Commission stating that it was not approving unless a district court afterwards approved? Or does the provision mean that the Commission unqualifiedly approved the projected cancellation of the warrants, but considered that an attempt at consummation would be futile without a district court order of enforcement?

■ If the condition postponing effectiveness of the provision concerning warrants causes the Commission's approval to

---

7. We agree with Judge Frank, dissenting in Leventritt v. Securities Exchange Commission, 2 Cir., 1949, 178 F.2d at page 338, that by this tactic the SEC can in effect nullify § 24(a) as to § 11(e) orders. We doubt, as did Judge Frank, whether Congress intended such a result. Unfortunately, the statute seems to permit it.

be potential and contingent instead of being a flat and absolute approval, that part of the plan cannot be judicially enforced at all; because the Commission cannot apply for enforcement of a plan which it has not actually approved, and a district court cannot enforce such a plan. By the same token, if the approval of the option warrants provision is contingent upon district court approval and so is not in reality an order of actual approval, we cannot review that portion of the plan but can only remand the case to the Commission so that it may either approve or disapprove it. We think the Commission must exercise its own independent judgment and must either approve or disapprove all features of a plan submitted to it.

■ We observe, however, that the order does not by its terms make its approval of the warrants portion of the plan potential or contingent. It merely provides that elimination of the warrants, which it approves, may not be consummated until a district court so orders. Our conclusion is that the Commission did not intend to, and did not, qualify or make contingent its approval of the proposed disposition of the option warrants but merely recognized that district court enforcement probably would be necessary to eliminate them; and that it has approved that phase as well as the remainder of the plan submitted. We hold that we have jurisdiction to review the plan in its entirety, as the district court enforcement has not been sought.

## II

Having determined that we have jurisdiction, we proceed to review the order, which of course entails an examination of the objections to the plan advanced by the petitioners. The parties have filed nine printed briefs, as well as other memoranda. Some of this mass of material, at times repetitious and irrelevant and marred by crimination and recrimination, has confused more than it has clarified the issues.

The petitioners argue that as §§ 1(c) and 11(b)(2) require elimination of public utility holding companies "except as otherwise expressly provided", and as the Act does not expressly provide that a holding company may be transformed into an investment company, the SEC violated the statute in permitting United to survive as an investment company instead of requiring dissolution. They say the Supreme Court in Otis & Company v. Securities & Exchange Commission, 1945, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511, found dissolution of a useless holding company to be mandatory and not voluntary under the Act.

■ It is certainly true that dissolution of a holding company is contemplated by § 11(b)(2) as a possible remedy, but it is equally true that the Act gives the Commission discretion to determine the steps necessary for compliance instead of specifying reorganization or dissolution. American Power & Light Co. v. Securities & Exchange Commission, 1946, 329 U.S. 90, 113–115, 67 S.Ct. 133, 91 L.Ed. 103.

As we read the Otis & Company case, it is not authority for the proposition to which petitioners cite it. In that case the Commission had ordered the dissolution and liquidation of the United Light and Power Company, a holding company. A plan for compliance with the order, submitted by the company and approved by the Commission, proposed distribution of its assets which would give to its preferred stockholders less than they were entitled to receive, under the company's charter provision, "Upon the dissolution or liquidation of the corporation, whether voluntary or involuntary."

The Supreme Court thus stated the question presented to it, 323 U.S. at page 625, 65 S.Ct. at page 484:

"An important although narrow legal point in the interpretation of the Public Utility Holding Company Act of 1935 is involved in this case. This is whether a plan under section 11(e) of that act may be 'fair and equitable' to preferred stockholders within the meaning of those words as used in that section, which allows a participation by junior common stockholders in the distribution of the assets of a registered holding company, which is liquidated in compliance with section

11(b)(2), before the senior preferred stockholders receive securities whose present value equals the preferred's full liquidation preferences."

And again, 323 U.S. at page 629, 65 S.Ct. at page 486, the Court said:

"* * * [T]he single issue as to whether, in the liquidation of a holding company by order of the Commission under section 11(e), a participation by junior security holders in the assets is permissible before preferred security holders have received the entire liquidating preference secured to them by the company's charter * *."

The Court's conclusion simply was that the distribution of assets ordered by the Commission was not a dissolution or liquidation within the meaning of the charter provision. It said, 323 U.S. at page 631, 65 S.Ct. at page 487:

"* * * The exercise of legislative power by Congress through section 11(b)(2) to accomplish simplification as a matter of public policy and the Commission's administration of the Act by dissolution of this particular company results in a type of liquidation which is entirely distinct from the 'liquidation of the corporation, whether voluntary or involuntary' envisaged by the charter provisions of Power [United Light and Power Company] for preferences to the senior stock.".

■ We think it is within the discretion of the Commission to permit a public utility holding company to cease to be such by becoming an investment company and that it is not required by the statute to order dissolution. On the authority of American Power & Light and Otis & Company cases we hold that the Commission may exercise its discretion as to whether to require dissolution under § 11(b)(2).

The petitioners further contend that in allowing United to continue in existence the SEC has acted inconsistently in that (a) it argued in the American Power & Light case that the statutory term "elimination" was intended to mean dissolution; and (b) in seventy-three prior cases the Commission has interpreted elimination as requiring dissolution. Petitioners also say there was no evidence to support the exercise of the Commission's discretion in favor of keeping United alive as an investment company; that the evidence shows mismanagement, ultra vires acts, incompetence, false financial statements, perjury and fraud by United's directors and officers.

■ The petitioners' charge of fraud, incompetence, etc., against the officers and directors of United were, of course, considered by the Commission, which nevertheless permitted the corporation to continue as an investment company, thus clearly showing that it regarded the charges as insubstantial. The Commission simply did not agree with the conclusions drawn from the evidence by the petitioners. Contrary to petitioners' contention, there is evidence in the record to support the Commission in exercising its discretion to permit United to survive.

■ The charge of perjury made by the petitioners against William M. Hickey, who became president of United in April, 1943, is based on statements made by him at a stockholders' meeting in 1947. On January 9 of that year, when no plan of compliance with the 1943 order was pending before the Commission or the courts, United applied to the Commission for authority to submit to a vote at its stockholders' meeting a plan to continue as an investment company after ceasing to be a holding company, and such permission was granted. After the stockholders' meeting convened, it was recessed by Hickey, over the objection of petitioner Phillips, to ascertain the existence of a quorum by an official count. United thereafter amended its plan to include withdrawal provisions and, as so amended, the plan was approved by the order of June 26, 1951. The furor about the recess of the 1947 stockholders' meeting seems to us to be immaterial. The 1951 plan's escape clause obviates the necessity for obtaining the stockholders' consent to United's emergence in an investment role, if such necessity ever existed. The Commission has not required United to continue indefinitely as an investment company and of course its stockholders may dissolve it hereafter when they please.

Various other objections to the approved plan are pressed by the petitioners. They say it is not necessary for United to retain 4.9 per cent of the voting stock of its subsidiaries in order to effectuate the provisions of § 11(b). They say the plan should be modified to transform United into a "diversified open-end investment company." They accuse the SEC of collaborating "in the attempt to stampede the 1947 vote." They charge the SEC "has improperly destroyed the collective bargaining power of the minority stockholders," because it has not required that cumulative voting and quorum requirements may not be changed except at the vote of two-thirds of the stock instead of a majority. Phillips complains because the Commission deferred consideration of his claim for reimbursement in the sum of about $42,000 for out-of-pocket expenditures in connection with proxy contests in 1943, 1944 and 1947, and instead of allowing his claim reserved jurisdiction over the payment by United of fees and expenses until all services have been substantially completed and can be evaluated in the light of the results achieved and the contributions made.

 These are attacks upon the manner in which the Commission has exercised its judgment in adjusting United so it will conform to legislative requirements. As the Supreme Court has said, in the American Power & Light case, 329 U.S. at page 112, 67 S.Ct. at page 146:

" * * * [T]he Commission here has accumulated experience and knowledge which no court can hope to attain. Its judgment is entitled to the greatest weight. While recognizing that the Commission's discretion must square with its responsibility, only if the remedy chosen is unwarranted in law or is without justification in fact should a court attempt to intervene in the matter. Neither ground of intervention is present in this instance."

The quoted language is particularly apt in the present case. While we have not discussed in detail each contention made by the petitioners, we have considered all the argument in their briefs with the greatest care. They have presented nothing which persuades us that we should modify the approved plan in the manner they suggest.

### III

We consider separately the matter of the elimination of the option warrants as it has been briefed separately by the parties.

The plan provides for the cancellation of United's outstanding 3,732,059 perpetual option warrants to buy its common stock at $27.50 per share, without compensation to the warrant holders. These warrants and 14,072,149.5 shares of common stock are the only securities of United now outstanding. The Protective Committee argues that the plan should be modified to leave the warrants outstanding with their present rights except for the reduction of the exercise price to $19.25 because the assets of United were reduced by about 30 per cent when certain shares of Niagara Hudson common stock were distributed to United's common stockholders.

As the Commission said:

"The option warrant confers no right or interest in the present assets and earnings of United; it merely affords a bare right to secure delivery of United common stock upon tender of the subscription price so long as the company remains in existence, with no right to require earnings to be applied to improve the value of the common stock which the holder has the option to purchase."

There was evidence before the Commission to the effect that the maximum market value to which United common stock might rise in the reasonably foreseeable future was $7.00 per share. Some witnesses testified that they could see no intrinsic value in the option warrants as they could not visualize an increase in the value of United's assets as great as would be necessary if its stock were ever to be worth the exercise price of $27.50. The Commission concluded that holders of the warrants were not entitled, in fairness and equity, to any participation in the reorganization of United, and found

624

"* * * that the continuance of the option warrants, representing as they do such an extremely tenuous right, would be inherently deceptive to investors and perpetuate in the corporate structure useless and unnecessary complexities, in contravention of the requirements of § 11(b)(2)."

The General Protective Committee argues to us that the effect of the cancellation of the warrants is to donate the rights of the warrant holders to the stockholders; that fairness requires and the standards of the Act permit that the exercise price of the warrants be reduced to $19.25 and that they be treated as though this had been done; that the warrants are not a complexity removable under the Act; and that cancellation is unfair to warrant holders.

 While there is evidence to the contrary, the findings of the Commission with respect to the warrants are supported by evidence which we regard as substantial. We think this phase of the case is controlled by Niagara Hudson Power Corp. v. Leventritt, 1951, 340 U.S. 336, 71 S.Ct. 341, 95 L.Ed. 319. That case involved option warrants for which no provision was made in the reorganization plan which was approved by the Commission. The SEC could not find that there was a reasonable expectation within the foreseeable future that the market price of the common stock would exceed the exercise price of the warrants. Upon consideration of all the circumstances, including the market for the warrants, SEC could not find justification for recognizing any present value in the warrants at the expense of the common stock.

The appeal in that case attacked the authority of the Commission as a matter of law to conclude that under the circumstances found by it the dissolution plan was fair and equitable within the meaning of § 11(e), where it provides for no participation for the outstanding warrants despite their conceded but low market value. The Court said, 340 U.S. at page 343, 71 S.Ct. at page 345:

"* * * If, for example, the market value of the common stock closely approaches the exercise price stated in the warrants, or if there is ground for a reasonable expectation that the two may coincide within the foreseeable future, then the warrants would have an intrinsic and investment value directly related to the common stock. Under those circumstances, we assume no plan of reorganization would be fair or equitable within the meaning of § 11(e) of the Act that did not recognize that value and provide an equitable equivalent for it."

Again the Court said, 340 U.S. at page 347, 71 S.Ct. at page 347:

"* * * We conclude, therefore, that in the present instance the Act does not require proof that the warrants are wholly worthless and without all market value in order to sustain the Commission's judgment that the plan is fair and equitable when it denies participation to them."

We see no reason to disturb the Commission's findings that the plan of compliance submitted by United, including the provision for eliminating option warrants, is necessary to effectuate the purposes of § 11(b) and is fair and equitable to the persons affected thereby. Having so found, the Commission was under a statutory duty to approve the plan.

Affirmed.