**The EQUITY CORPORATION,**
Appellant,

v.

**Bartholomew A. BRICKLEY, Trustee, et al., Appellees.**

**CENTRAL–ILLINOIS SECURITIES CORPORATION, et al.,**
Appellants,

v.

**Bartholomew A. BRICKLEY, Trustee, et al., Appellees.**

Nos. 5127, 5128.

United States Court of Appeals First Circuit.

Heard Oct. 4, 1956.

Decided Oct. 26, 1956.

As Amended Nov. 23, 1956.

12.

· David Schenker, New York City, with whom Schenker & Schenker, New York City, was on brief, for The Equity Corp., appellant.

Morris L. Forer, Philadelphia, Pa., with whom Daniel C. Cohen, and Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., were on brief, for Central-Illinois Securities Corp. and C. A. Johnson, appellants.

Aaron Levy, Atty., Washington, D. C., with whom Thomas G. Meeker, Gen. Counsel, Frederick Zazove, Chief Counsel, Division of Corporate Regulations, and Robert S. Keebler, Atty., Washington, D. C., were on brief, for Securities and Exchange Commission, appellee.

Ganson Purcell, Washington, D. C., with whom C. Roger Nelson, Washington, D. C., was on brief, for Interim Board of Directors of Internat. Hydro-Electric System, appellee.

Henry J. Friendly, New York City, with whom Leonard S. Sheriff, New York City, was on brief, for Lucinda Bunnen et al., appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge..

Appellants in these cases, Central-Illinois Securities Corporation, a registered investment company, and C. A. Johnson, its president and principal stockholder, and The Equity Corporation, another registered investment company, are all stockholders of International Hydro-Electric System (hereinafter abbreviated to IHES), a registered holding

company under the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79 et seq. The appeals are from an order of the United States District Court for the District of Massachusetts entered April 23, 1956, issued under § 11(d) of the Act, approving and enforcing a plan of reorganization of IHES deemed to be a fair and equitable means of compliance with the corporate simplification requirements of § 11(b) of the Act, in accordance with an order of the Securities and Exchange Commission, as modified.

IHES was organized as a Massachusetts business trust, under an original declaration of trust dated March 25, 1929, and since amended from time to time. The trustees, and by delegation the board of directors, were given the broadest discretionary powers to engage in almost any sort of business activity— this without the requirement of a favoring vote by the shareholders, and without any obligation on the part of the trust to buy out a dissenting shareholder. Thus, though IHES started out as a holding company in the public utility field, the trustees and/or the board of directors, if they deemed it advisable, were fully empowered to dispose of the utility subsidiaries of the trust and to transmute IHES into an investment company.

On June 17, 1940, the Securities and Exchange Commission instituted a proceeding under § 11(b) of the Public Utility Holding Company Act to determine what action was necessary to be taken by IHES to comply with the simplification standards of § 11(b) (2). Eventually, on July 21, 1942, after elaborate hearings, the Commission issued its Findings, Opinion and Order requiring that IHES be liquidated and dissolved, such liquidation and dissolution to be "carried out with care and in a manner which subserves the public interest in every particular." International Hydro-Electric System, 11 SEC 888, 908. On a petition by a shareholder of IHES for review of this Commission order, under § 24(a) of the Act, the Court of Appeals for the Sixth Circuit upheld the Commission and directed that the shareholder's petition for review be dismissed. Todd v. S. E. C., 1943, 137 F.2d 475.

In view of the inability of the IHES management to come forward with a satisfactory plan for the orderly liquidation of the holding company, the Commission filed in the United States District Court for the District of Massachusetts an application under § 11(d) of the Act asking for a court decree enforcing compliance with the Commission's dissolution order of July 21, 1942. The district court took jurisdiction of IHES and its assets and enjoined the debenture holders from filing suits for enforcement of their claims pending the orderly liquidation of the estate. In November, 1944, the district court appointed Bartholomew A. Brickley as trustee of the estate of IHES, and since then Mr. Brickley has continued actively in that capacity.

In 1947 the trustee and interested security holders filed various plans for a division of the assets and for dissolution of IHES. After extensive hearings, serious disagreements among the various classes of security holders became apparent. In April, 1949, the trustee proposed a Second Plan, in four parts, for the liquidation of IHES. Parts I and II provided for the retirement of the IHES debentures and for a two-year bank loan. Part III provided for the issuance of trustee certificates to IHES preferred shareholders and Class A stockholders, and Part IV provided for distribution of the residue of the assets and dissolution of the enterprise. After Parts I and II had been duly approved by the Commission and the district court, a compromise agreement was executed on March 26, 1953, the terms of which were embodied in Part III (as amended) and Part IV (as amended) of the trustee's Second Plan. Part III (as amended) provided (a) for the retirement of the IHES preferred stock, and (b) for the election of an interim board of directors of IHES to consist of nine members, with the function of representing the stock-

holders in formulating a plan for implementing Part IV (as amended), which called for a request to the Commission to modify its flat dissolution order of July 21, 1942, so as to permit the continuance of IHES as a closed-end nondiversified investment company to be registered as such under the Investment Company Act of 1940, 54 Stat. 789, 15 U.S.C.A. § 80a–1 et seq. Be it noted that at the date of this compromise agreement of March 26, 1953, all the parties in interest were in apparent accord upon the desirability of modifying the Commission's dissolution order to permit survival of IHES as an investment company, and all assumed that the Commission had power to make such modification.

Meanwhile, in June, 1949, Paul H. Todd, a large stockholder in IHES, had proposed a plan to the Commission under which IHES would be permitted to continue in existence as an exempt holding company under § 3(a) (5) of the Act, this on the argument that most of the abuses and violations of the Act pointed out in the Commission's opinion supporting its 1942 dissolution order had already been eliminated. The Todd plan was supported by the IHES Class A stockholders but was opposed by the trustee, by the Commission's staff, and by the IHES preferred stockholders. An order was entered by the Commission disapproving the Todd plan. Upon a petition for review under § 24(a) filed by the Class A Stockholders Protective Committee, the Court of Appeals for the Second Circuit sustained this order of denial by the Commission. Protective Committee, etc. v. S. E. C., 1950, 184 F.2d 646.

After that, Todd and the Class A Stockholders Protective Committee took a new tack and filed other plans for the continuance of IHES, now to be divested of other public utility subsidiaries and turned into an investment company, instead of remaining as an exempt holding company as previously proposed and turned down by the Commission. While these plans were pending, the trustee of IHES made arrangements for the disposition of its various domestic subsidiaries, which greatly increased the cash position of IHES. The Class A stockholders of IHES and its preferred stockholders were persuaded to harmonize their previous differences and to execute the compromise agreement of March 26, 1953, above alluded to, upon assurances by the Commission's staff that the staff would support the proposal for continuance of IHES as an investment company, provided the bank debt and the IHES preferred stock were retired, leaving IHES with only one class of outstanding stock, the Class A stock, and with no domestic utility subsidiaries, IHES retaining only the stock of one foreign public utility, Gatineau Power Company of Canada.

A special election was held for the choice of the interim board of directors on April 27–28, 1954. There had been a proxy contest between two rival factions, the so-called Todd-Jacobs group and the Johnson-Romney group. Ninety-five per cent of the outstanding Class A shares voted at the election, and on the face of the returns the Todd-Jacobs group elected five men and the Johnson-Romney group elected four. On December 8, 1954, the district court entered an order provisionally seating as the interim board of directors of IHES the nine persons so chosen, "with only the authority and for the sole purpose of representing the Class A stockholders in all proceedings before the Securities and Exchange Commission and this Court and in particular with reference to the formulation of proposals for the consummation of Part IV (First Amendment) of the Trustee's Second Plan."

The interim board in January, 1955, filed its plan, under which IHES (renamed Abacus Fund) would continue as a closed-end investment company, with minor and noncontroversial amendments to the old declaration of trust in the direction of increasing the protection of the stockholders. Upon registration as an invesment company, it was proposed that the Commission would issue an

order exempting the company as a holding company under § 3(a) (5) of the Act.

A different plan was filed by appellants Johnson and Central-Illinois Securities Corporation, supported in the main also by appellant The Equity Corporation. Under this rival plan, IHES would be split into two registered investment companies, each to hold an aliquot portion of the present IHES assets. It was assumed that the stockholders in the Todd-Jacobs group would generally stay with IHES, while stockholders in the Johnson-Romney group would affiliate with the new company. No such split-off was suggested at the time of the proxy fight for election of the interim board, at which time the Johnson-Romney group was contending for mastery of the whole investment potential of IHES as a unified fund. The Johnson plan also provided that dissenting shareholders, who did not wish to affiliate with either investment company, would be entitled to withdraw upon receiving their pro rata share of the net assets of the estate. It was also provided that unless at least two thirds of the Class A stock accepted the Johnson plan, IHES would forthwith be liquidated, though under the IHES declaration of trust it required a vote of two thirds of the shares to compel a liquidation.

After lengthy hearings on the plans, the Commission on November 23, 1955, filed its Findings and Opinion in which after pointing out certain favorable tax consequences which would inhere in the interim board plan and be jeopardized or frustrated in the Johnson plan, it concluded that the interim board plan, with minor amendments, was the only plan submitted which could receive its approval. The Commission also stated that if its suggested changes in the interim board plan were made by the board, "the 1942 order directing the liquidation and dissolution of IHES may be modified so as to permit its transformation into an investment company, that IHES will qualify for an exemption

under Section 3(a) (5) of the Act following such transformation". The interim board having promptly amended its plan to conform with the Commission's suggestions, the Commission on January 13, 1956, entered its order finding that the interim board plan, as amended, was an appropriate means for effecting compliance with § 11(b) (2), was fair and equitable and satisfied the other applicable provisions of the Act, and it was further ordered that the Commission's dissolution order of July 21, 1942, "be and it hereby is modified to the extent necessary to permit IHES to consummate the aforesaid Interim Board plan; provided, however, that if said Interim Board plan be not approved and enforced by the Court or if said plan be not consummated the said order of July 21, 1942 shall be deemed to be in full force and effect as if not modified herein."

By supplemental application in the long-drawn-out proceeding before the district court, the Commission requested the court to approve and enforce the plan of the interim board. After notice and hearing, the court on April 23, 1956, adopted as its own the findings of fact and conclusions of law of the Commission dated November 23, 1955; approved the interim board plan "as fair and equitable, as appropriate to effectuate the provisions of Section 11 of the Act, and as satisfying the other applicable provisions of the Act." Further, the court order directed the trustee promptly to call a meeting of Class A shareholders for the purpose of electing a board of nine directors of IHES as reorganized pursuant to the plan. This order of the district court of April 23, 1956, is the one now on appeal.

▪ We think there can be no substantial doubt of the power of the Commission to make an appropriate modification of its outright dissolution order of July 21, 1942, notwithstanding the fact that in 1943 that dissolution order was sustained on review by the Court of Appeals for the Sixth Circuit. In support of this conclusion we need look no further than to the unqualified statutory

authority in the last paragraph of § 11 (b) of the Act: "The Commission may by order revoke or modify any order previously made under this subsection, if, after notice and opportunity for hearing, it finds that the conditions upon which the order was predicated do not exist. Any order made under this subsection shall be subject to judicial review as provided in section 24." See American Power & Light Co. v. S. E. C., 1946, 329 U.S. 90, 121, 67 S.Ct. 133, 91 L.Ed. 103. Appellants have misconceived our holding in Bailey v. Proctor, 1 Cir., 1948, 166 F. 2d 392, in relying upon that case as authority for the proposition that the Commission needed to obtain prior leave from the Court of Appeals for the Sixth Circuit before proceeding to modify its dissolution order of July 21, 1942. See Federal Communications Commission v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 140–144, 60 S.Ct. 437, 84 L.Ed. 656. And the judgment of the Court of Appeals for the Second Circuit, 184 F.2d 646, sustaining an order of the Commission in 1949 disapproving the Todd plan for modification of the dissolution order so as to permit the continuance of IHES as an exempted holding company, was no barrier to the subsequent determination of the Commission, having in view the drastically altered condition of IHES as it existed on January 13, 1956, to modify its earlier order of dissolution so as to permit the consummation of the interim board's plan contemplating the continued existence of IHES as an investment company. Nor does the fact that the jurisdiction of the court below was first invoked under § 11(d) of the Act for the purpose of having that court enforce compliance with the Commission's earlier dissolution order prevent the Commission from subsequently modifying such order as above stated. By force of the authority of § 11(b) of the Act, as above recited, when the Commission modified its 1942 order to permit compliance by an alternative method, the district court's jurisdiction was not ousted but was continued to enforce the Commission's order as modified. And, of course,

the district court's order now under review, approving and enforcing the interim board's plan for converting IHES into an investment company, by necessary implication constituted an approval by the court of the Commission's aforesaid modification of its earlier dissolution order.

■ Also, we think it clearly appears from the Commission's elaborate findings and opinion, if not from the abbreviated statement of the case which we have made above, that there was ample evidence to sustain the Commission's conclusion that the interim board's plan should be approved as fair and equitable and in compliance with all the provisions of the Act. Nor can we say that the district court erred in adopting as its own the findings and conclusions of law of the Commission.

There is no doubt that the remedy of dissolution is not the only means for achieving the statutory objective of eliminating useless holding companies; transformation into an investment company may also be a permissible method of ceasing to be a holding company. Downing v. S. E. C., 1953, 92 U.S.App. D.C. 172, 203 F.2d 611, 622, certiorari denied 1954, 346 U.S. 930, 74 S.Ct. 319, 98 L.Ed. 422.

■ We cannot accept appellants' arguments that the approved plan is necessarily unfair and inequitable (1) because the proposed transformation of IHES into an investment company was not made subject to an approving vote of at least two thirds of the Class A stock, as provided in the Johnson plan, or (2) because the approved plan contained no provision permitting dissenting shareholders to withdraw from the trust upon payment for their shares (of course, they are free to sell to outsiders if they want to get out). Approval by vote of the shareholders of a plan otherwise in compliance with the standards of § 11(b) is not made mandatory by any statutory requirement. See Phillips v. S. E. C., 2 Cir., 1946, 153 F.2d 27, certiorari denied 1946, 328 U.S. 860, 66 S.Ct. 1350, 90 L.Ed. 1630. Though the

Commission at an earlier stage approved plans having this feature, after further experience with the undesirable delays and controversies which often accompanied such a requirement of a stockholders' vote, the Commission adopted the policy of refusing to impose a voting requirement. See the extensive discussion by the Commission in Electric Bond and Share Company, Holding Company Act Release No. 11675 (1953). Furthermore, as pointed out by the Commission, a new vote on this issue by the Class A stockholders would serve no useful purpose. As stated in the Commission's opinion, the 1954 proxy contest incident to the selection of the interim board of directors pursuant to the compromise agreement of March 26, 1953, at which 95 per cent of the outstanding Class A stock voted, "was carried out in an atmosphere of continuation of IHES as an investment company. Each of the contesting groups represented from the beginning and throughout the contest that its objective was to convert IHES into an investment company with full preservation and realization upon its tax situation." In addition to that, under the approved plan there will, upon registration of the reorganized IHES as an investment company, be an election by the Class A stockholders of a new board of directors; and, of course, if the Johnson-Romney faction obtains a majority of the board at such election, it will come into control of the investment policies of the continued company. It is also to be pointed out that, after the approved reorganization is completed, the stockholders, if they wish, may exercise their franchise and cause liquidation of IHES, provided they obtain a two-thirds vote for that purpose in accordance with the terms of the declaration of trust; whereas, under the disapproved Johnson plan, it was in effect sought to enforce a dissolution of IHES by vote of less than a majority of the stock.

■ Likewise, there is no specific statutory requirement that a plan under § 11(b), to be approved as fair and equitable, must contain a provision permitting withdrawal by dissenting stockholders. In this connection it is to be noted that, under the disapproved Johnson plan, dissenting stockholders were not to be paid off in cash, as is provided under some state corporation laws, but were to be given a right of withdrawal from the enterprise upon payment to them of an aliquot share of the portfolio assets. Furthermore, appraisal rights of dissenting stockholders, as provided in Massachusetts law applicable to corporations, do not extend to IHES, organized as a Massachusetts trust; and as we have already observed, apart from the provisions of the Holding Company Act, the directors of IHES, under the powers vested in them by the declaration of trust, could have disposed of the portfolio of domestic utility companies and reinvested the proceeds in any other type of business or securities—this without any right of withdrawal by a dissenting stockholder. As the Commission stated, many plans under § 11(b) which have been approved both by the Commission and by the courts did not afford a right of withdrawal to dissenting stockholders, even where (as is not the case here) approval of such plans involved disregarding withdrawal rights existing under corporate charters. For these, and other reasons fully spelled out in the Commission's opinion, it was obviously within the Commission's broad discretionary power to approve the interim board plan though the plan did not contain any withdrawal provision.

Other contentions by appellants have been considered, but we think they do not have sufficient merit to call for special discussion.

The order of the District Court is affirmed.